**In re Gerald J. GARNER, Respondent, A Member of the Bar of the District of Columbia Court of Appeals.**

**No. 92–SP–497.**

District of Columbia Court of Appeals.

Argued Nov. 9, 1993.

Decided Jan. 20, 1994.

Michael S. Frisch, Asst. Bar Counsel, with whom Leonard H. Becker, Bar Counsel, Washington, DC, was on the brief, for petitioner, the Office of Bar Counsel.

Michael J. Steponovich, Jr., Irvine, CA, for respondent.

Before FERREN, TERRY, and SULLIVAN, Associate Judges.

TERRY, Associate Judge:

In this reciprocal discipline case, the Board on Professional Responsibility ("the Board") has recommended that respondent's license to practice law in the District of Columbia be revoked to correspond with his disbarment in New York. We accept the Board's recommendation and order respondent disbarred in the District of Columbia.

I

Respondent Garner was admitted to the New York Bar in 1961 and, at some time thereafter, to the District of Columbia Bar as well. In 1981 the New York authorities began a disciplinary proceeding against him based on his alleged misconduct in an adoption case in California, in which he represented a New York couple seeking to adopt a

1. For a more detailed summary of the facts surrounding Garner's suspension, *see In re Garner,* 576 A.2d 1356 (D.C.1990), *opinion after remand,* 611 A.2d 969 (D.C.1992). The New York decision is reported at *In re Garner,* 103 A.D.2d 390, 480 N.Y.S.2d 127 (1984), *modified in part,* 107 A.D.2d 653, 484 N.Y.S.2d 791, *appeal dismissed,* 65 N.Y.2d 636, 480 N.E.2d 752, 491 N.Y.S.2d 1030 (1985).

California child. Eventually a New York court found Mr. Garner guilty of two charges of dishonesty and misrepresentation and, in October 1984, ordered him suspended from the practice of law in New York for one year. This court, in turn, suspended him for six months from the practice of law in the District of Columbia in a reciprocal disciplinary proceeding.[1]

While the New York proceedings were under way, Mr. Garner became involved in the organization of a bank to be located in Anaheim, California. In June 1983 he filed a document with the Office of the Comptroller of the Currency of the United States (OCC) in connection with his application for approval as an organizer and director of the proposed bank. That document, a "Confidential Biographical and Financial Report" in the form of a questionnaire, required him to provide information

regarding each disciplinary proceeding or action of which you are, or have been the subject, with respect to any professional license you hold or have held. Examples: Disbarment, censure of conduct, revocation of license, etc.

In the space below this text were three columns to be filled out, headed "Name of Authority," "Nature of Proceedings," and "Disposition and Date." Garner's entire answer, however, was as follows:

NONE—except for nominal fee dispute inquiries and a 1975 question of whether or not there was a violation of a compact law, all of which have resulted in no action.

In September 1984 Mr. Garner submitted a second document to the OCC. In response to the same question, he simply wrote "None." In neither of these documents did he reveal to the OCC the pendency of the New York disciplinary proceedings against him.[2]

2. The documents submitted to the OCC were signed by Garner with the following certification:

I certify that the information contained in this Confidential Biographical and Financial Report has been carefully examined by me and is correct and complete, and acknowledge that any misrepresentation or omission of a material fact constitutes fraud in the inducement and is grounds for denial of a certificate authoriz-

On November 12, 1985, a representative of the OCC contacted the Office of the Grievance Committee of the New York Bar and reported Garner's filing of the two false statements with the OCC. The Grievance Committee opened an investigation and in due course determined that his misconduct violated Disciplinary Rules 1–102(A)(4) (misrepresentation and dishonesty) and 1–102(A)(6) (fitness to practice law). The Appellate Division of the New York Supreme Court, Second Division, ordered him disbarred. *In re Garner*, 176 A.D.2d 26, 580 N.Y.S.2d 59, *appeal dismissed*, 80 N.Y.2d 917, 602 N.E.2d 1118, 589 N.Y.S.2d 302 (1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1263, 122 L.Ed.2d 660 (1993). The order of disbarment was filed with this court by District of Columbia Bar Counsel, and on April 30, 1992, we entered an order suspending Garner from the practice of law in the District of Columbia under D.C.Bar Rule XI, § 11(d).[3] This court then directed the Board on Professional Responsibility to recommend whether reciprocal discipline should be imposed.[4]

The Board, after further proceedings, concluded that Garner had failed to show that any exception to reciprocal discipline was warranted under Rule XI, § 11(c), and recommended reciprocal disbarment. The matter is now before us for a ruling on the Board's recommendation.

## II

Garner argues that this court should not impose reciprocal discipline because the New York proceeding that resulted in his disbarment was lacking in due process. Additionally, Garner maintains that disbarment would constitute substantially different discipline

from that which would be imposed if this case had originated in the District of Columbia. We reject both arguments.

D.C.Bar Rule XI, § 11(c) provides, in relevant part, that in reciprocal discipline cases identical discipline "shall be imposed" unless the attorney demonstrates by clear and convincing evidence that:

(1) The procedure elsewhere was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process....

The rule also states, in pertinent part:

Unless there is a finding by the Board under [subsection (1)] above that is accepted by the Court, a final determination by a disciplining court outside the District of Columbia ... that an attorney has been guilty of professional misconduct shall conclusively establish the misconduct for the purpose of a reciprocal disciplinary proceeding in this Court.

This rule "creates a rebuttable presumption that the discipline will be the same in the District of Columbia as it was in the original disciplining jurisdiction." *In re Zilberberg*, 612 A.2d 832, 834 (D.C.1992) (citation and footnote omitted). A principal benefit of the presumption is that it enables us to avoid an "inconsistent disposition involving identical conduct by the same attorney." *In re Velasquez*, 507 A.2d 145, 147 (D.C.1986). Thus, in a reciprocal discipline case, we generally defer to the original disciplining court in its choice of an appropriate sanction, even when that sanction would not otherwise be available in the District of Columbia. *See, e.g., In re Chadwick*, 585 A.2d 798, 798 ("no reason exists to impose a sanction different from the one imposed in California"), *modified on oth-*

---

ing the commencement of banking business and may subject me to other legal sanctions, including those provided by 18 U.S.C. § 1001.

3. Section 11(d) requires this court, upon receipt of an order of suspension or disbarment issued by another court, "forthwith [to] enter an order suspending the attorney from the practice of law in the District of Columbia pending final disposition of any reciprocal disciplinary proceeding...."

4. Garner's misconduct occurred when District of Columbia attorneys were governed by the former

Code of Professional Responsibility. The District's version of the Code did not include subsection (A)(6). This difference, however, creates no impediment to the imposition of reciprocal sanctions, provided that "the discipline of the foreign jurisdiction is within the range of sanctions that would be imposed [in the District of Columbia] for the same misconduct." *In re Garner, supra* note 1, 576 A.2d at 1357 (citations omitted); *accord, e.g., In re Youmans*, 588 A.2d 718, 719 (D.C.1991).

*er grounds,* 591 A.2d 837 (D.C.1991); *In re Velasquez, supra,* 507 A.2d at 147.

With these principles in mind, we turn to Mr. Garner's contentions.

### A. *Due Process*

Garner contends that he was deprived of his due process right to cross-examine witnesses when, during the New York disciplinary proceeding, the special referee hearing the case allowed a witness from the OCC to refuse to answer various questions posed by Garner's counsel. The referee compounded this error, Garner maintains, by refusing thereafter to strike the witness' entire testimony as a result of his failure to answer these questions.

The referee's challenged ruling came during the testimony of Donald Lamson, the Assistant Director of the Securities and Corporate Practice Division of the OCC. Mr. Lamson was called by New York disciplinary counsel to provide background information about OCC procedures involved in the chartering of a bank, and to authenticate the documents that Garner had filed with the OCC and explain their significance. On cross-examination Mr. Lamson responded to questions about the OCC's procedure in approving Mr. Garner as a bank officer based upon the false statements, and Garner's counsel was given wide latitude in questioning him about these matters. Lamson declined, however, to answer questions about the manner in which the OCC had brought Garner's misconduct to the attention of the New York Bar, and declined also to testify about the status of OCC disciplinary action against Garner. Mr. Lamson explained his refusal to answer these questions by citing his limited authority to testify on such confidential matters. The special referee accepted Lamson's explanation and did not compel him to answer counsel's questions, character-

izing them as "far afield" from the disciplinary proceeding.

Our review of the record convinces us that there was no due process violation. Mr. Lamson was called to testify only for a limited purpose and to authenticate copies of the documents he had brought with him. It was only when counsel sought to go beyond these confines that the referee stopped him from doing so. Moreover, Garner has failed to show how he was prejudiced by the referee's rulings limiting the scope of his cross-examination. How the charges came to the attention of the New York authorities was essentially irrelevant to the fairness of the hearing or to its outcome. We agree with the observation in Bar Counsel's brief that Garner's "due process contention amounts to no more than unhappiness with an adverse evidentiary ruling in an area of no consequence to the finding of misconduct." We hold, accordingly, that there is no basis for us to conclude that Garner's due process rights were violated.

### B. *Sanction*

Before the Board Garner argued that disbarment would constitute a substantially different discipline from what we would normally impose if the case had originally arisen in this jurisdiction.[5] The Board concluded, however, and we agree, that disbarment is well within the range of sanctions for similar misconduct in the District of Columbia. *See, e.g., In re Gilbert,* 538 A.2d 742, 746 (D.C.), *cert. denied,* 488 U.S. 828, 109 S.Ct. 80, 102 L.Ed.2d 56 (1988) (failure to disclose material information on Maryland Bar application warrants reciprocal disbarment where such misconduct would incur similar discipline if it occurred in the District of Columbia).

Garner's reliance on *In re Hutchinson,* 534 A.2d 919 (D.C.1987) (en banc), in which we imposed only a one-year suspension, is misplaced for at least two reasons. First, in

---

**5.** D.C.Bar Rule XI, § 11(c), provides in part:
    Reciprocal discipline shall be imposed unless the attorney demonstrates, by clear and convincing evidence, that:
    \*    \*    \*    \*    \*    \*
    (4) The misconduct established warrants substantially different discipline in the District

of Columbia. . . .

*Hutchinson* the attorney's misconduct was limited to a two-week period, at the end of which he voluntarily acknowledged his misrepresentations and recanted the false testimony he had given to the Securities and Exchange Commission. Second, Mr. Hutchinson had no disciplinary record before the misconduct which resulted in his one-year suspension. Mr. Garner, on the other hand, has at no time recanted the two false statements he filed with the OCC in 1983 and 1984. In addition, he has a significant prior record of professional misconduct. In 1978 he was the subject of a letter of caution for engaging in a conflict of interest; in 1980 he was given a letter of admonition for neglecting a legal matter; and in 1984 he was suspended from the practice of law for one year in New York, and reciprocally suspended for six months in the District of Columbia, for dishonesty and misrepresentation.[6] Given this background, we think that Garner's misconduct warrants a significantly more severe sanction than we imposed in *Hutchinson*.[7]

### III

It is therefore ORDERED that respondent, Gerald J. Garner, is disbarred in the District of Columbia. This order of disbarment shall be effective *nunc pro tunc* as of April 30, 1992, the date of his suspension under Rule XI, § 11(d).[8]

---

6.  See note 1, *supra*.

7.  Garner also relies on the Board's recommendation of a six-month suspension in *In re McGough*, Bar Docket No. 275–87. That recommendation, however, was made before McGough was convicted on fourteen felony charges in a federal court. After those convictions were affirmed on appeal, we ordered McGough disbarred. *In re McGough*, 605 A.2d 605 (D.C.1992).

8.  Mr. Garner has filed an affidavit in accordance with D.C.Bar Rule XI, § 14(f), certifying that he has not practiced law in the District of Columbia since April 30, 1992.