**In re Neal BERGER and Frank A.K. Awuah, Respondents.**

**Members of the Bar of the District of Columbia Court of Appeals.**

**Nos. 97–BG–1979, 97–BG–1980.**

District of Columbia Court of Appeals.

Argued June 24, 1999.
Decided Sept. 16, 1999.

Michael S. Frisch, Senior Assistant Bar Counsel, with whom Leonard H. Becker, Bar Counsel, was on the brief, for Bar Counsel.

Elizabeth J. Branda, Executive Attorney, for the Board on Professional Responsibility.

Before SCHWELB, FARRELL and RUIZ, Associate Judges.

RUIZ, Associate Judge.

In both of these reciprocal discipline matters, one from New Jersey, and the second from Maryland, the Board on Professional Responsibility ("Board") has recommended that the court depart from the presumption of imposing identical sanction in a reciprocal discipline proceeding, by omitting a fitness requirement [1] upon the completion of respondents' suspensions imposed as part of the sanctions in New Jersey and Maryland. The Board reasons that the fitness requirement would represent "substantially different discipline" from that which we would impose had these matters arisen as original discipline cases. Bar Counsel disagrees, arguing that a departure from the presumptively correct sanction imposed by our sister jurisdictions is unwarranted. Neither respondent has filed a brief or exceptions to the Board's report and recommendation in this court. We agree with Bar Counsel that identical reciprocal sanction is appropriate, and further endorse Bar Counsel's suggestion that the decision of whether the fitness requirement has been met in this jurisdiction should closely conform to the disciplined attorney's reinstatement in the original jurisdiction.

## I.

### A. 97–BG–1979 (In re Neal J. Berger).

In the New Jersey disciplinary action, respondent Berger was suspended by the Supreme Court of New Jersey for two years on October 16, 1997, after he had committed a series of fraudulent transactions with various insurers on behalf of himself and his firm. On March 7, 1988, Berger filed an insurance claim on behalf of his law firm, Poltrock and Berger, located in Florham Park, New Jersey, for damage caused by an office fire to furniture, computers, and other office items, which was settled by the insurer, Insurance Company of North America, for $13,692.77. On April 27, 1988, the law firm submitted a supplemental claim to its insurance agent, Horn Insurance Services, for replacement of trees and shrubbery, rental of new office space and loss of paper and records. To support its supplemental claim, the firm submitted a copy of a lease purportedly signed by Richard Falkin, the managing partner of Offices Unlimited, Inc., the landlord for the "new" office

---

[1] A fitness requirement refers to the requirements of D.C. Bar R. XI, § 16 that a suspended or disbarred attorney provide "proof of rehabilitation" by clear and convincing evidence as a condition of reinstatement. *See In re Robinson*, 736 A.2d 983, 984 n. 1 (D.C. 1999). See also note 20, *infra*.

space, and Berger, as partner in the law firm.

The subsequent routine investigation by the insurer revealed that Falkin was not associated with Office Unlimited, and that the submitted lease form was no longer used by the landlord. The insurance investigator also determined that Berger's law firm had not relocated. The claim was then referred to the Fraud Division of the New Jersey Department of Insurance. The Fraud Division's investigation determined that Falkin had not in fact signed the lease, and that Berger previously had asked Falkin for a sample lease, which Falkin had supplied.

When asked about the claim, Berger explained to the Fraud Division investigator that he had obtained the lease in the event that the firm had to relocate due to the fire damage. Berger blamed his secretary for mistakenly submitting the lease as part of the insurance claim, stating that he had instructed her to place the lease in the file instead. When the investigator pointed out that Berger's signature appeared on the letter to the insurance agent, which had listed the lease as an enclosure, Berger changed his explanation to say that he had not realized that the firm would not have to move until after he had sent the letter. The law firm subsequently withdrew the supplemental claim. The New Jersey Disciplinary Review Board ultimately determined that Berger's explanation was not credible, and that Berger had forged the landlord's signature on the lease with the intent to defraud the insurance carrier.

Berger also submitted a claim to a second insurer, St. Paul Property and Liability Insurance, on behalf of Kelmar Realty Investors ("Kelmar"), the firm's landlord for the Florham Park office space, for structural damage resulting from the fire. To supplement his claim, on June 23, 1988, Berger submitted a release that he had prepared and witnessed, and which was purportedly signed by Michael Farrell, Kelmar's president.[2] After St. Paul sent a check in the amount of $10,428.15 to the firm, payable jointly to Kelmar and to the firm, respondent endorsed the check on behalf of the firm. Farrell's signature on behalf of Kelmar also appeared on the check. The check was deposited into one of the firm's bank accounts under the name "Springwick, Inc."[3]

At the hearing in the New Jersey disciplinary action, Farrell testified that he had been in the process of selling Kelmar's office space to Berger's law firm prior to the fire, and that he was not aware of the fire until about a week after it had occurred. Farrell further testified that he did not learn either of the claim submitted by Berger on behalf of Kelmar, or of the insurance check and release bearing his signature, until the Fraud Division officer showed them to him. The disciplinary action charged Berger with forging Farrell's signature on the release and the settlement check and of swearing a false jurat on the release. At the hearing, Berger denied forging Farrell's signature, and stated that he could not recall making the attestation or preparing the release, and that his normal practice was to take only jurats in the signatory's presence. The Disciplinary Board found that Berger had executed a false jurat on the release when he notarized Farrell's signature, and that

2. The name of Kelmar's president is differently spelled, "Farrell" and "Farrel," in the documents before the court on appeal.

3. In a second claim filed with St. Paul, Berger requested compensation for $8,000 in fire-related expenses, including a claim of $1,681.09 for damage for furniture. A St. Paul investigator later discovered that the furniture in question actually cost $1,081.09, and determined that the receipt had been altered to reflect a higher purchase price. Berger denied that he had altered the receipt, and stated that it would have been pointless to alter the receipt as the firm had already met its policy limits. The New Jersey Disciplinary Review Board concluded that there was not sufficient evidence to find that Berger had either altered the furniture receipt or submitted it knowing that it had been altered.

the false jurat was made for Berger's personal gain, as it facilitated the law firm's claim for additional insurance proceeds. However, the Board did not find clear and convincing evidence to prove forgery on the release or on the settlement check because Farrell had testified that at the time of the fire, the law firm owned the property, and insurance proceeds would have been payable to the law firm.

Berger was later charged criminally with one count of false swearing for falsely notarizing Farrell's signature without Farrell's appearance before him.[4] He subsequently entered into a consent agreement with the Fraud Division, under which he agreed to enter into a pretrial intervention program without admitting or denying that he had submitted a false insurance claim, and to pay a $5,000 civil penalty for himself, and a $5,000 penalty for each of his two law partners. The New Jersey Disciplinary Review Board, relying on a series of cases involving mail fraud and schemes to defraud insurance companies, recommended suspending Berger from the practice of law for two years. The Supreme Court of New Jersey agreed with the recommendation, concluding that Berger had violated New Jersey Rule of Professional Conduct 8.4(b) (commission of criminal acts that reflect adversely on respondent's fitness as a lawyer); RPC 8.4(c) (conduct involving dishonesty, fraud, deceit, or misrepresentation); and RPC 8.4(d) (conduct prejudicial to the administration of justice). *See In re Berger*, 151 N.J. 476, 700 A.2d 1230 (1997). Under New Jersey Rule 1:20–21. Berger was also required to file a petition for reinstatement with the Supreme Court of New Jersey in order to be readmitted to the New Jersey Bar.[5]

After this court entered an order suspending Berger on an interim basis pursuant to D.C. Bar Rule XI, § 11(d), and referring the matter to the Board for a recommendation as to whether to treat the matter as a reciprocal case, Bar Counsel filed a statement with the Board recommending the imposition of reciprocal discipline. Berger filed an affidavit, pursuant to *In re Goldberg*, 460 A.2d 982 (D.C.1983), contesting the New Jersey findings and asserting that 1) there was a lack of proof establishing the misconduct, and 2) even if he had committed the alleged misconduct, the sanctions issued were in excess of those imposed under similar circumstances in New Jersey. Berger further stated that a grave injustice would result if the District of Columbia Court of Appeals were to impose reciprocal discipline because the facts did not support such a severe sanction in the District. A second affidavit, pursuant to D.C. Bar Rule XI, § 14(g), was also submitted by Berger. On July 24, 1998, the Board filed its Rule and Recommendation with this court, agreeing that the two-year suspension was appropriate, but declining to recommend the additional fitness requirement under the "substantially different discipline" exception of Rule XI, § 11(c)(4), after concluding that it would fall outside the range of sanctions imposed in the District had this case arisen under our original jurisdiction. Bar Counsel filed an exception to the Board report.

### B. 97–BG–1980 (In re Frank A.K. Awuah).

Respondent Frank A.K. Awuah was indefinitely suspended by the Court of Ap-

---

4. Berger was not charged criminally with forgery or insurance fraud.

5. Under New Jersey Court Rule 1:20–21, an attorney suspended for any length of time is required to file a petition for reinstatement with the Disciplinary Review Board. *See* N.J. Ct. R. 1:20–21(a), (b). If there are no objections to the attorney's reinstatement petition, the Board may then submit its findings and recommendations to the New Jersey Supreme Court in lieu of oral argument. *See id.*, (g).

If the Director of the Office of Attorney Ethics files objections, the Board, after considering the objections, may either submit its findings and recommendations to the Supreme Court without argument, or set the matter for oral argument. *See id.* The Director of the Office of Attorney Ethics in New Jersey is the equivalent to Bar Counsel here in the District of Columbia. *See* N.J. Ct. Rule 1:20–2(b); *see also* D.C. Bar R. XI, § 6(a).

peals of Maryland, with the right to apply for reinstatement after 60 days, following a series of disciplinary rule violations resulting from his mismanagement of his attorney trust account. See Attorney Grievance Comm'n of Md. v. Awuah, 346 Md. 420, 697 A.2d 446, 454 (1997). Most of the evidence presented in the disciplinary proceeding related to Awuah's handling of client monies received through settlements reached with the clients' insurers, and his subsequent failure to disburse payments due to a third-party medical provider, Medical Home Care Equipment (MHCE), in satisfaction of assignments and authorizations which Awuah had received from MHCE. Before the Maryland trial court, Awuah admitted that he had failed to maintain a separate account as was required for the handling of client funds, but stated that he had been unaware of the requirement to maintain such a separate account.[6] See id. at 449–50.

The trial court found that Awuah used his practice's trust account as a repository for client funds as well as for fees that he earned in connection with some of his cases. See Awuah, supra, 697 A.2d at 450. After determining what monies were owed his clients, Awuah disbursed the sums from the trust account, leaving his own fees in the account. He then used the money in the account representing his fees, to pay personal and operating expenses as needed. See id. Awuah kept no records with which he could differentiate the sums he owed to his clients and the sums he earned as fees. See id. However, the trial court found no evidence that any of Awuah's clients had lost any money since he began practicing law in Maryland as a result of his poor accounting practices. In addition, it appeared to the court that almost at all times, Awuah was able to maintain sufficient funds in the account to cover all checks drawn on the account. See id. From these factual findings, the Maryland trial court concluded that Awuah had failed to maintain a trust account as required by Maryland Rule BU3,[7] and that Awuah " 'repeatedly commingled client funds with those of his own and that he failed to keep proper records regarding the handling of those monies' " in violation of Rule BU9.[8] Id. at 452 (quoting trial court). However, the court agreed with Awuah that the violations were unintentional and that Awuah "was not motivated to use client funds for his own benefit." Id.

The Court of Appeals of Maryland affirmed the lower court's factual finding that Awuah did not misappropriate any of his clients' money. See id. at 453. After recognizing that Awuah's violations resulted from negligent rather than intentional misconduct and that Awuah had taken steps to comply with the rules pertaining to the maintenance of trust accounts, the Court of Appeals determined that the appropriate sanction was an indefinite sus-

---

**6.** Awuah did acknowledge that he was chargeable with knowledge of such a requirement.

**7.** MD. RULE BU3. *Duty to Maintain Account* provides:

An attorney or the attorney's law firm shall maintain one or more attorney trust accounts for the deposit of funds received from any source for the intended benefit of clients or third persons.... Unless an attorney maintains such an account, or is a member of or employed by a law firm that maintains such an account, an attorney may not receive and accept funds as an attorney from any source intended in whole or in part for the benefit of a client or third person.

See also MD. CODE ANN., BUS. OCC. & PROF. § 10–302 (1996).

Subtitle BU of the Maryland Disciplinary Rules was renumbered and placed in Title 16, Chapter 600, of the Maryland Rules effective January 1, 1997. See Awuah, supra, 697 A.2d at 448 n. 7.

**8.** Md. Rule BU9. *Prohibited Transactions* provides in relevant part:

An Attorney or law firm may not borrow or pledge any funds required by these Rules to be deposited in an attorney trust account, ... or use any funds for any unauthorized purpose.

See also MD. CODE. ANN., BUS. OCC. & PROF. § 10–306.

pension from the practice of law, with a right to apply for reinstatement after 60 days. *See id.* at 454.[9] This right was further conditioned upon Awuah's ability to pay for all costs relating to the disciplinary proceeding, and upon the monitoring of the financial management of Awuah's office for a period of one year, unless sooner terminated upon the recommendation by Maryland Bar Counsel, by a monitor approved by Bar Counsel and the Court of Appeals. *See id.*

■ As in the *Berger* case, D.C. Bar Counsel recommended to the Board that reciprocal discipline be imposed.[10] While Awuah advised the Board that he had not been reinstated in Maryland, he did not otherwise respond to the show cause order pursuant to D.C. Bar Rule XI, § 11(d). On July 31, 1998, the Board filed its report and recommendation, agreeing that Awuah should be suspended for 60 days,[11] but recommending that respondent be reinstated automatically upon the expiration of the 60–day period without requiring a showing of fitness. The Board disagreed with the imposition of a fitness requirement under the "substantially different discipline" exception of Rule XI, § 14(c)(4), stating that it fell well outside the range of sanctions which the District would impose in cases of commingling.[12] However, the Board further recommended as part of the D.C. sanction that Awuah submit to the monitoring of the financial management of

his law office by Maryland Bar Counsel for a period of one year, unless sooner terminated. Bar Counsel subsequently noted an exception to the Board's recommendation.

## II.

In these consolidated appeals, Bar Counsel opposes the Board's recommendations not to include fitness requirements in its recommended sanctions, asserting that the Board has improperly departed from the presumption we apply in reciprocal discipline cases in favor of imposing the identical sanction in the District of Columbia as imposed in the original jurisdiction. Bar Counsel further argues that disposing of the fitness requirement in a reciprocal discipline proceeding undermines an important safeguard of the disciplinary system intended for the protection of the public, without the confidence to be derived from the original jurisdiction's judgment that the attorneys are fit to resume practice. Instead, Bar Counsel proposes that the fitness requirement be imposed as a reciprocal matter, but that reinstatement here also follow in the main as a reciprocal matter once the attorneys are reinstated in the original disciplining jurisdiction.

### A. The applicable law.

■ D.C. Bar R. XI, § 11(c) provides that "[r]eciprocal discipline shall be imposed unless the attorney demonstrates,

9. Under Md. Rule 16–713, an attorney who has been suspended for any length of time may not practice law until after the attorney has filed with Bar Counsel a verified statement showing that the attorney has complied in all respects with the terms of the suspension, and Bar Counsel has notified the Clerk that the attorney has complied with those terms. The petition itself must "set forth facts showing that the petitioner is rehabilitated and is otherwise entitled to the relief sought." Md. Rule 16–714(b). The attorney has the burden of establishing entitlement to reinstatement by clear and convincing evidence. *Id.* (d)(4).

10. We view a Maryland sanction of indefinite suspension with the right to reapply for rein-

statement after a period of time as the "functional equivalent" of a suspension for the length of time before the right to reapply is permitted, plus a requirement of fitness. *See In re Powell*, 646 A.2d 340, 342 (D.C.1994).

11. The 60–day period is to commence upon Awuah's filing of the affidavit required by D.C. Bar R. XI, § 14(g). As of the date of the filing of Bar Counsel's brief in this case, Awuah had not filed the affidavit.

12. The Board stated that it did not believe a fitness requirement was appropriate particularly where it thought that the 60–day suspension by itself was already "at or over the high end of sanctions."

by clear and convincing evidence," that the attorney's case falls within one of five enumerated exceptions. *See In re Spann,* 711 A.2d 1262, 1262–63 (D.C.1998); *In re Gardner,* 650 A.2d 693, 695 (D.C.1994). This rule "creates a rebuttable presumption that the discipline will be the same in the District of Columbia as it was in the original disciplining jurisdiction." *In re Zelloe,* 686 A.2d 1034, 1036 (D.C.1996) (quoting *In re Zilberberg,* 612 A.2d 832, 834 (D.C.1992) (citation omitted)). Accordingly, "we will generally defer to the original disciplinary court in its choice of an appropriate sanction, even · when that sanction would not otherwise be available in the District of Columbia." *In re Garner,* 636 A.2d 418, 420 (D.C.1994).

▮ Although the plain language of Rule XI, § 11(c) places the burden on the disciplined attorney to prove by clear and convincing evidence that a lesser sanction is warranted, nevertheless the Board may, under our interpretation of D.C. Bar Rule XI, § 11(f)(2), recommend a different sanction where it believes that an exception applies. *See Spann, supra,* 711 A.2d at 1263 (citing *Gardner, supra,* 650 A.2d 693, 695 (D.C.1994)). We give less deference to Board recommendations in reciprocal discipline cases than in original proceedings. *See Zelloe, supra,* 686 A.2d at 1036 (comparing D.C. Bar R. XI, § 9(g)(1) with D.C. Bar R. XI, § 11(f)(2)). Where the Board recommends against reciprocal discipline (and provided that Bar Counsel has timely filed an opposition to the Board's recommendation, *see* D.C. Bar R. XI, § 11(g), or this court directs that the matter be considered under D.C. Bar R. XI, § 11(f)(2)), a different sanction may be imposed if this court determines, from the face of the disciplinary record, that there is clear and convincing evidence that one of the five grounds in § 11(c) is present in the case. *See* D.C. Bar R. XI, § 11(f)(2); *see also Spann, supra,* 711 A.2d at 1263.

▮ The exception to the imposition of reciprocal discipline at issue in this case is found in § 11(c)(4), which allows us to depart from the presumed identical sanction if "[t]he misconduct established warrants substantially different discipline in the District of Columbia." To make this determination, we conduct a two-step inquiry:

> First, we must determine whether the "misconduct in question would not have resulted in the same punishment here as it did in the disciplining jurisdiction." Second, we determine whether "the difference is substantial." *In re Garner,* 576 A.2d 1356, 1357 (D.C.1990) (citations omitted). Regarding the first step, "the question is whether the discipline of the foreign jurisdiction is within the range of sanctions that would be imposed for the same misconduct" in this jurisdiction. *Id.* (citing *In re Hirschberg,* 565 A.2d 610, 614 (D.C.1989)).

*Zelloe, supra,* 686 A.2d at 1036.

### B. *In re Neal Berger.*

In his *Goldberg* affidavit explaining to the Board why the identical discipline should not be imposed in the District, respondent Berger gave largely the same explanations for his misconduct as he had given to the New Jersey Disciplinary Board, and argued, pursuant to D.C. Bar R. XI, § 11(c), that lesser sanctions were warranted because there was a failure of proof establishing the charged misconduct and because the imposition of the same discipline in the District "would result in a grave injustice, as the facts do not support such a severe sanction." The Board, taking Berger's affidavit into account, compared Berger's misconduct to original discipline cases in this jurisdiction where the attorney had submitted false notarizations or falsely sworn to the authenticity of a document, and determined that had Berger's case arisen in an original discipline case, "substantially different discipline" would have been imposed in the District.[13]

---

**13.** The Board cited *In re Reback,* 513 A.2d 226 (D.C.1986) (en banc), where the respon-

In recommending that Berger be suspended for two years with automatic reinstatement without a showing of fitness, the Board considered that Berger's misconduct was for a limited duration, and did not involve any clients, as well as the fact that he had no prior disciplinary history. In contrast, Bar Counsel considers respondent's misconduct to be more akin to cases involving "serious dishonesty for personal profit," citing *In re Gil*, 656 A.2d 303 (D.C. 1995) and *In re Goffe*, 641 A.2d 458 (D.C. 1994) (per curiam), and thus argues that the record does not establish, by the requisite clear and convincing evidence, that a downward departure from the New Jersey disposition is warranted.

■ We agree with Bar Counsel that the Board has failed to demonstrate that, on the face of the disciplinary record, there is clear and convincing evidence that the misconduct engaged in by respondent would warrant "substantially different discipline" had this case been presented for original discipline.[14] As a preliminary matter, we note that there was no determination by the Board that the New Jersey disciplinary proceeding deprived Berger of due process, that there was an infirmity of proof establishing the misconduct, or that

the misconduct in New Jersey would not have constituted misconduct here in the District. *See* D.C. Bar R. XI, § 11(c). Accordingly, we must accept as conclusive the New Jersey determination that Berger committed the charged misconduct for the purposes of deciding the appropriate sanction in this reciprocal discipline case. *See id.*

■ In determining the appropriate sanction, the New Jersey Disciplinary Board analogized Berger's misconduct to cases involving mail and insurance fraud, recognized as an aggravating factor that Berger's misconduct had been committed for his personal benefit, and recommended a two-year suspension, which triggered New Jersey's automatic requirement of a reinstatement petition. See note 5, *supra.* Although the D.C. Board on Professional Responsibility did not find any procedural infirmities or lack of proof in the New Jersey disciplinary process, *see* D.C. Bar R. XI, § 11(c), it nevertheless re-characterized Berger's misconduct as involving false swearing, and recommended a downward departure from the New Jersey discipline. Given the language of D.C. Bar R. XI, § 11(c),[15] however, the Board should

dent was suspended for six-months for falsifying a client's signature on a divorce complaint, having the signature notarized and submitting the document to the court, and *In re Thompson*, 538 A.2d 247 (D.C.1987) (per curiam), where the respondent was suspended for one year for helping a client make false statements on an INS application. The Board also cited *In re Fink*, 696 A.2d 1082 (D.C.1997) (per curiam), where the respondent was suspended for six months and required to take a continuing legal education course in a reciprocal matter for making misrepresentations in five U.S. Housing and Urban Development real estate closings.

14. Bar Counsel criticizes the Board's decision to conduct an "independent review" of the record of the New Jersey proceeding, citing *In re Spann, supra,* in which this court admonished the Board for engaging "in the near-equivalent of a *de novo* review" of a disciplinary proceeding in a sister jurisdiction. *Spann, supra,* 711 A.2d at 1265. Unlike in *Spann,* however, Berger did object to the imposition of reciprocal discipline, and pre-

sented what were, in his view, mitigating circumstances which warranted lesser sanction than that imposed by New Jersey. Under these circumstances, we find no error in the Board's decision to independently consider whether any of the exceptions set forth in Rule XI, § 11(c) were applicable. *See In re Reid*, 540 A.2d 754, 758 (D.C.1988) (per curiam); *Gardner, supra*, 650 A.2d at 696.

15. D.C. Bar R. XI, § 11(c) states in pertinent part:

Unless there is a finding by the Board [that (1) the proceeding in the original disciplining jurisdiction deprived the attorney of due process, (2) there was an infirmity of proof establishing the misconduct, or (5) the misconduct in the original disciplining jurisdiction does not constitute misconduct in the District] that is accepted by the Court, a final determination by a disciplining court outside the District of Columbia or by another court in the District of Columbia that an attorney has been guilty of professional

not have questioned the factual conclusions reached in New Jersey, particularly where the Board did not have the benefit, as did the New Jersey Board, of being able to hear live testimony from witnesses and observe their demeanor. *Cf. In re Chisholm,* 679 A.2d 495, 502 (D.C.1996) (recognizing that under D.C. Bar R. XI, § 9(g)(1), this court is required to accept the Board's findings of fact where a hearing committee heard witnesses and had the opportunity to observe their demeanor, and "the Board has upheld the findings of the Committee, and these findings turn in substantial part on credibility determinations which we are in no position to second-guess") (quoting *In re Shillaire,* 597 A.2d 913, 916 (D.C.1991)). Thus, we consider Berger's misconduct, as did the New Jersey Supreme Court, to be akin to cases involving fraud for personal gain.

 In determining whether a recommended sanction is appropriate, we must consider the purpose served by Bar discipline, which we have described as being "to protect the public, the courts and the legal profession." *In re Haupt,* 422 A.2d 768, 771 (D.C.1980) (per curiam). Thus, the sanction should reflect the nature of the misconduct, and the presence of any mitigating or aggravating circumstances. *See id.* In this jurisdiction, the sanctions for a single instance of dishonesty range from public censure, *see In re Hadzi–Antich,* 497 A.2d 1062 (D.C.1985), to disbarment, *see Gil, supra,* 656 A.2d 303; *see also In re Fink,* 696 A.2d 1082, 1084 (D.C. 1997) (imposing reciprocal six-month suspension of reinstatement conditional upon completion of continuing legal education requirement of original disciplining jurisdiction). As the two-year suspension imposed in New Jersey falls squarely within that range, we see no reason to deviate from that portion of the recommended sanction.

 We also conclude that the fitness requirement is appropriate. The Board determined that a fitness requirement was not necessary because respondent's misconduct occurred more than ten years ago, he had no prior disciplinary history, and no clients were affected by his fraudulent actions. In *In re Gil, supra,* a case which the Board considers to be inapposite to this case, we imposed disbarment on an attorney who forged a friend's signature on letters to gain access to his friend's funds held in certificates of deposit while the friend was on vacation, even though by the time of his disciplinary hearing, the attorney had repaid all of the principal and had cooperated fully in the disciplinary process. *See Gil, supra,* 656 A.2d at 304. We agreed with the Board's recommendation to disbar the attorney even though, like respondent Berger, his misconduct had occurred over a short period of time of less than three months and he had no prior disciplinary record. *See id.* We note that in contrast to Gil's single instance of misconduct, however, which admittedly involved intentional misappropriation which warrants automatic disbarment, *see In re Addams,* 579 A.2d 190, 191 (D.C.1990) (en banc), the Board's consideration of the appropriate sanction in this case failed to take into account the fact that the New Jersey Disciplinary Board concluded that there was clear and convincing evidence that respondent Berger had engaged in more than a single act of misconduct, first by forging the landlord's signature on a phony lease with the intent to defraud one of his firm's insurance carriers, and, in addition, by falsely notarizing his firm's landlord's signature on a release with a second insurer.

Moreover, the New Jersey authorities considered respondent's behavior to be serious enough to criminally charge him with the fourth-degree offense of false swearing for falsely notarizing his land-

misconduct shall conclusively establish the misconduct for the purpose of a reciprocal

disciplinary proceeding in this Court.

lord's signature. Although his consent agreement with the Fraud Division enabled Berger to avoid having to admit or deny that he engaged in false swearing or insurance fraud, the New Jersey Board nevertheless concluded, based on a review of the facts, that Berger had violated New Jersey Rule of Professional Conduct 8.4(b) (commission of criminal acts that reflect adversely on respondent's fitness as a lawyer). *See Berger, supra,* 700 A.2d at 1230. Had Berger not avoided criminal proceedings, and been convicted of the offense in New Jersey,[16] which the New Jersey Board considered on the facts of Berger's case to be equivalent to mail fraud, the appropriate sanction in the District of Columbia would be disbarment.[17] *See* D.C.Code § 11–2503(a) (providing that when a member of our Bar has been "convicted of an offense involving moral turpitude," that attorney must be disbarred); *In re Bereano,* 719 A.2d 98, 99 (D.C.1998) (recognizing that "mail fraud, a felony offense, is a crime of moral turpitude *per se* "); *In re McBride,* 642 A.2d 1270, 1273 (D.C.1994) (per curiam) (defining moral turpitude as "intentionally acting dishonestly for personal gain"); *In re McBride,* 602 A.2d 626, 629 (D.C.1992) (en banc) (noting that a misdemeanor offense "may be held to involve moral turpitude on the facts of the case"). Disbarment always requires a petition for reinstatement and showing of fitness. *See* D.C. Bar R. XI, § 16(a).

Finally, given our concern for the public in determining the appropriate sanction, *see Haupt, supra,* 422 A.2d at 771, we are troubled by the fact that Berger still does not appear to recognize the seriousness of his misconduct as he has continued to dispute the factual findings of the New Jersey disciplinary authorities, blaming the submission of the forged lease on his secretary, and claiming that he does not remember notarizing the landlord's signature on the release. *See In re Roundtree,* 503 A.2d 1215, 1216 (D.C.1985) (noting that in petition for reinstatement attorney has burden to show by clear and convincing evidence understanding of seriousness of misconduct). Accordingly, we conclude that, on the face of this record, there is not clear and convincing evidence that respondent Berger's misconduct warrants substantially different discipline in this jurisdiction, and adhere to the strong presumption in favor of imposing identical sanction in a reciprocal discipline proceeding. Respondent Berger will therefore be required to demonstrate that he is fit to practice law upon the termination of his two-year suspension.

### C. In re Frank A.K. Awuah.

 Unlike Berger, respondent Awuah did not file an exception to Bar Counsel's recommendation that identical discipline be imposed, informing the Board only that he had not yet been reinstated in Maryland.[18] In such cases, the scope of

---

**16.** We note that in New Jersey, a fourth-degree offense is considered to be equivalent to a misdemeanor, *see* N.J. STAT. ANN. § 2C:43–1 (1999), even though a conviction for a fourth-degree offense is punishable by up to 18 months in prison and $10,000 fine. *See id.* §§ 2C:43–3 (b)(2), –6(a)(4); *see also id.* § 2C:28–2 (categorizing false swearing as a fourth-degree offense).

**17.** A conviction for mail fraud apparently does not result in automatic disbarment in New Jersey. *See, e.g., In re Sloane,* 147 N.J. 279, 686 A.2d 1191 (1997) (imposing two-year suspension for conviction of one count of mail fraud).

**18.** Although 60 days have passed since he was initially suspended, Awuah has yet to file for reinstatement in Maryland. Prior to oral argument, this court was informed that respondent has subsequently violated other Maryland rules of professional conduct, and has had his indefinite suspension extended in Maryland. Before he may be reinstated in Maryland, Awuah must now also pay the costs for the second disciplinary proceeding and agree to have someone monitor his practice for two years. At oral argument, the Board stated that it had not had a chance to review the latest developments in Maryland, but nevertheless wished to proceed with its recommendation in this appeal. This court has since referred the additional matter to the Board to

the Board's inquiry into the appropriateness of the sanction is limited, *see Spann, supra,* 711 A.2d at 1265, and the Board should at most "review the foreign proceeding sufficiently to satisfy itself that no obvious miscarriage of justice would result in the imposition of identical discipline—a situation that we anticipate would rarely, if ever, present itself." *Id.* Despite its limited role, the Board nevertheless determined that it would be a "grave injustice" to impose a fitness requirement in Awuah's case. Although recognizing that Awuah's commingling of client funds involved several different clients, thus necessitating the sixty-day suspension, the Board concluded that the fitness requirement would "clearly fall far outside the range of sanctions which might be imposed in the District of Columbia for commingling," and therefore constituted "substantially different discipline." The Board considered, among other things, the six-to eighteen-month period which it normally takes to process petitions for reinstatement, and the fact that "there is every indication in this matter that the Maryland Court expects that Respondent will be summarily reinstated." [19] Thus, in an attempt to provide "functionally equivalent discipline" in

the District of Columbia [20] as in Maryland, the Board recommended that Awuah should be suspended for sixty days with no requirement to file a reinstatement petition upon termination of the suspension period.

■ As in Berger's case, Bar Counsel takes exception to the Board's downward departure from the sanction imposed by the original disciplining jurisdiction, citing the presumption in favor of reciprocal discipline in D.C. Bar Rule XI, § 11(c). We agree with Bar Counsel that the downward departure is inappropriate, especially in a case where respondent Awuah has not objected to Bar Counsel's recommendation of identical reciprocal discipline. Our rules already provide a high bar for attorneys who object to the imposition of reciprocal discipline, requiring them to prove to our satisfaction by clear and convincing evidence that on the face of the evidentiary record one of the enumerated exceptions in D.C. Bar Rule XI, § 11(c) warrants different discipline. *See* D.C. Bar Rule XI, § 11(f)(2). Thus, *a fortiori,* where there has been no objection from the attorney to the imposition of reciprocal disci-

recommend if reciprocal disciplinary action is necessary with respect to the subsequent misconduct. *See In re Awuah,* No. 99–BG–736 (D.C. June 29, 1999).

19. As is the case in New Jersey, a suspended or disbarred attorney in Maryland may be summarily reinstated without a hearing by the Court of Appeals upon the filing of a verified petition of reinstatement if there is no objection from Bar Counsel. *See* Md. R. 16–714; *see also* New Jersey R. 1:20–2, *supra* note 5.

20. The District's scheme of bar governance does not contain procedures whereby a disbarred attorney or an attorney suspended with a fitness requirement may be adjudged fit to practice law and summarily reinstated. *See In re Arnett,* 565 A.2d 963, 963 n. 1 (D.C.1989) (per curiam). Instead, under D.C. Bar R. XI, § 16(d), a plenary hearing before the Board is required in every case where we have imposed a requirement to prove fitness to practice as a condition of reinstatement. *See id.* In this hearing, the petitioner must

satisfy certain enumerated criteria as set forth in Rule XI, § 16(d), and in *In re Roundtree, supra,* 503 A.2d at 1217. Rule XI, § 16(d) requires that an attorney seeking reinstatement demonstrate ultimately to this court that he or she has "the moral qualifications, competency, and learning in law required for readmission" and that his resumption of practice "will not be detrimental to the integrity and standing of the Bar, or to the administration of justice, or subversive to the public interest." *Id.* We consider five factors in each reinstatement case:

(1) the nature and circumstances of the misconduct for which the attorney was disciplined; (2) whether the attorney recognizes the seriousness of the misconduct; (3) the attorney's conduct since discipline was imposed, including the steps taken to remedy past wrongs and prevent future ones; (4) the attorney's present character; and (5) the attorney's present qualifications and competence to practice law.

*See In re Steele,* 630 A.2d 196, 201 (D.C.1993) (quoting *Roundtree, supra,* 503 A.2d at 1217).

pline, we repeat that the "obvious miscarriage of justice" which is required for a departure from the presumed identical discipline is "a situation that we anticipate would rarely, if ever, present itself." *Spann, supra,* 711 A.2d at 1265. We are particularly unpersuaded that such a situation presents itself here where, even after the Board's recommendation and Bar Counsel's exception, respondent Awuah has not complained to this court that identical discipline should not be imposed.

### III.

We conclude with a few words about the procedures to be followed in situations where, as in both of these appeals, the original disciplining jurisdiction, unlike the District of Columbia, has procedures providing for summary reinstatement where the petitioner asserts that he or she has met the conditions of reinstatement, and there has been no objection from Bar Counsel or its equivalent. Bar Counsel acknowledges the Board's attempt to provide "functionally equivalent discipline" in light of Maryland's and New Jersey's practice of summarily reinstating suspended attorneys to the bar where there is no objection from Bar Counsel, *see* Md. Rule 16–714(d)(2); N.J. Court Rule 1:20–21, but submits that the appropriate response is not to allow automatic reinstatement in the District of Columbia upon expiration of the suspension period, as this approach potentially could put District residents at risk where the disciplined attorney has not demonstrated fitness to practice law in his or her home jurisdiction. Instead, Bar Counsel recommends that this court continue to impose the reciprocal fitness requirement as a condition to reinstatement, and leave open the possibility of vacating the requirement for an independent full-fledged fitness inquiry in this jurisdiction, see *supra* note 20, once the attorney has demonstrated fitness to practice pursuant

to the summary procedures applicable in the original disciplining jurisdiction, and upon Bar Counsel's representation to this court that the attorney has satisfied the *Roundtree* criteria.

We consider Bar Counsel's proposal to be quite sound, one which strikes a proper balance between the purpose served by Bar discipline, which is "to protect the public, the courts and the legal profession," *Haupt, supra,* 422 A.2d at 771, and the deference given to the original sanctioning jurisdiction in reciprocal discipline cases. *See, e.g., Garner, supra,* 636 A.2d at 420. Under this proposal, absent objection by Bar Counsel that the attorney has not met the *Roundtree* criteria, an attorney who is suspended with a fitness requirement in the District of Columbia through imposition of discipline reciprocal to that imposed in a jurisdiction that permits summary reinstatement, will be relieved of the reinstatement requirement here, and be permitted to resume the practice of law in the District of Columbia, once the attorney has demonstrated fitness to practice in a summary proceeding satisfactory to the original disciplining jurisdiction.[21] *Cf. In re Arnett, supra* note 20, 565 A.2d at 964 n. 1 (noting, in reciprocal discipline case, that attorney subject to reinstatement requirement is not automatically reinstated in the District of Columbia upon reinstatement in original jurisdiction). As our Bar governance scheme creates a rebuttable presumption that the identical sanction will be imposed in reciprocal discipline cases, we consider it appropriate for this court to follow the lead of the original disciplining jurisdiction in determining when the reinstatement requirement imposed on the disciplined attorney does not require a full-fledged proceeding. Accordingly, so as to provide "functionally equivalent discipline" in the District of Columbia as in jurisdictions such as New Jersey or Maryland which automatically impose a reinstatement re-

---

**21.** Respondent Awuah's case presents a strong case in support of Bar Counsel's proposal, and against the Board's approach, as he has subsequently been found to have vio-

lated additional Maryland rules of professional responsibility, and remains suspended in Maryland. See note 18, *supra*.

quirement on all suspended attorneys and provide for summary reinstatement of attorneys where Bar Counsel or its equivalent does not object, we would anticipate that the Board will adapt its procedures so as to minimize the length of time it would take to advise the court whether the reinstatement requirement should be vacated in such cases. *Cf. Steele, supra* note 20, 630 A.2d at 201 (Farrell, J., concurring) (noting that the reinstatement process in the District of Columbia takes approximately eighteen months).

## IV.

In view of the foregoing, we impose the identical sanction of sixty-day and two-year suspensions imposed by Maryland on Awuah and by New Jersey on Berger, respectively, with the requirement that both respondents prove their fitness to return to the practice of law upon the completion of their suspensions.

*So ordered.*