IN THE MATTER OF HOWARD L. JACOB, III, AN
ATTORNEY AT LAW.

Argued December 13, 1983—Decided January 24, 1984.

*Colette A. Coolbaugh,* Counsel, argued the cause for complainant Disciplinary Review Board.

*Richard J. Schachter* argued the cause for respondent (*Schachter, Wohl, Cohn & Trombadore,* attorneys; *John F. Bracaglia, Jr.,* on the brief.)

PER CURIAM.

This disciplinary proceeding was presented initially before the District XII Ethics Committee. An investigation of the respondent had been initiated on the basis of the complaint of an attorney who represented a banking institution that held a mortgage on premises that were the subject of a sale. The mortgage was to have been satisfied from the sale proceeds. When the mortgage thereafter went into default, inquiries revealed that the mortgage had not been satisfied and that the failure to apply the proceeds was the fault of the respondent who represented the purchasers. Respondent arranged for the discharge of the mortgage shortly after receiving the pointed inquiries from the mortgagee bank's attorney. The incident was related to the Central Ethics Unit of the Administrative Office of the Courts. The ensuing investigation into this matter by the District Ethics Committee resulted initially in a dismissal of the complaint. An appeal by the Division of Ethics and Professional Services to the Disciplinary Review Board resulted in a remand for a further investigation, which included an examination of respondent's trust account records. This inquiry unraveled a skein of continuing misappropriations of clients' funds by respondent. In the meantime respondent consented to a temporary suspension from the practice of law.

At the hearing on the asserted ethics violations, the record consisted of three documents introduced into evidence with the

consent of the respondent and his attorney. These consisted of a "disciplinary stipulation," a "disciplinary action-consent order," and a letter report from the firm of certified public accountants that conducted the audit of respondent's records. The stipulations established that during 1981 and 1982 respondent failed to make appropriate disbursements of clients' trust funds resulting in misappropriations totalling approximately $30,000. It was also stipulated that respondent, who was admitted to the bar in 1975 and practiced law as a sole practitioner from 1979 to September 16, 1982, did not maintain his trust and business accounts in compliance with the requirements of *R.* 1:21–6(b)(1) and (2). The stipulation further noted that respondent had made full and complete restitution to all clients.

Respondent did not dispute any of these facts. However, he reserved the right to present relevant and material evidence in mitigation of the disciplinary rule infractions designated by the stipulation.

Respondent's position, as summarized in the presentment of the District Ethics Committee, is that he suffered from thyrotoxicosis in 1981 and 1982 and that this condition, together with his continuing disappointment over his and his wife's inability to have children, caused certain aberrational conduct on his part that manifested itself in hyperactivity, depression, irrationality, intoxication, extra-marital sexual gratification, and irresponsibility both in his personal and professional pursuits.

The only medical evidence in support of respondent's position was a letter from his physician. The hearing panel noted from the letter that the physician is a general practitioner and apparently is not a licensed psychiatrist or analyst. The panel accepted his report "with that reservation, and with the further reservation that we do not know if he is Board certified in a psychogenic discipline." He treated respondent as a family physician for ten years. This letter related that respondent was being treated for thyrotoxicosis ("described as a state of intoxication due to excessive or abnormal activity of the thyroid

gland") since April 1981. The letter further related that respondent had also received treatment for that condition from another doctor from Plainfield. The treatment of respondent's regular physician had been basically psychotherapy sessions that started out at two to three sessions per week and were occurring approximately once every 3 to 4 weeks at the time of the hearing.

The District Ethics Committee summarized respondent's testimony as follows:

> Respondent testified that his thyroid condition was in remission and that at the present time he feels fine physically and better emotionally. He testified further that he feels as though he is starting his life over. His relationship with his wife, which at one point in 1981 resulted in a separation from her for approximately one month, is now on the mend. The "dual life style" which respondent indicated he had been living seems to have disappeared, and he is back to his former personality.

The Committee also considered the corroborative testimony of his wife who attributed the changes in respondent's behavior during 1981 and 1982 as having been caused by "demons in his head."

The hearing panel was persuaded that respondent exhibited a change in his personality in 1981 and in 1982, and that during that time he was diagnosed as suffering from thyrotoxicosis. However, the hearing panel was not convinced based upon the proofs submitted that "his medical condition accompanied by claimed psychogenic factors was responsible entirely for the serious breaches of the disciplinary and court rules referred to herein."

The District Ethics Committee accepted the findings of its hearing panel. The Committee noted that respondent made full restitution and respondent cooperated with the Committee. It also found that respondent's improper conduct "was related in part to a medical problem," and that his "motive was not greed." Nevertheless, the Committee found by clear and convincing evidence that respondent violated *DR* 9–102(B)(3), *DR* 9–102(B)(4) and *DR* 9–102(C), and that he should be disciplined.

The appeal before the Disciplinary Review Board was not restricted to the record that was made before the District Ethics Committee. The Board also accepted a supplemental medical report from respondent's physician. This report presented the doctor's educational background and his professional experience as a psychotherapist. It also explained the form of psychotherapy he preferred in treating patients such as respondent and made the observation that "Mr. Jacob is not out of his emotional moods by a long shot [and that] he needs much guidance to allow him to re-earn his self-esteem."

The Board was "satisfied that the conclusions of the Committee in finding unethical conduct on the part of respondent are fully supported by clear and convincing evidence." It determined:

> The respondent has admitted misappropriation of nearly $30,000 in trust funds between 1981 and 1982. There is no demonstrable causal connection between the misappropriations and respondent's illness which led to his bizarre personal behavior. Nor does the respondent claim such a connection. Indeed, the record reflects that respondent utilized the funds in question to support what the Committee referred to as his "dual life." Respondent's illness therefore cannot be considered as a mitigating circumstance.

> The respondent deliberately utilized client funds for his own benefit. The continued confidence of the public in the integrity of the bar and judiciary mandates disbarment. *In re Wilson,* 81 *N.J.* 451 (1979).

We concur in the determination and the recommendation of the Disciplinary Review Board. There can be no dispute that continuing and substantial misappropriations of clients' funds occurred. These totalled approximately $30,000. These extensive misappropriations, according to the summary of disbursements included in the report of the certified public accountants, commenced in July 1980 and continued until March 1982, spanning more than one and one-half years and encompassing no less than fifty-seven successive withdrawals from two different accounts. The misappropriations were persistent and purposeful.

We are not persuaded that respondent's medical condition or other circumstances can serve to exculpate these misappropriations. The District Ethics Committee mentioned as mitigating

factors the respondent's relative youth and the stabilizing influence of his wife. Also, while the hearing panel and Committee felt respondent was not motivated by "greed," it was noted that respondent testified that the clients' moneys he misappropriated were not used for "any one specific purpose" but "to sustain his dual life style . . . ." Furthermore, neither the hearing panel nor the Committee was persuaded by respondent's proofs that his medical condition was an exclusive or major cause of his ethical derelictions.

The Board correctly determined that respondent's medical presentation failed to establish any "causal connection" between his condition and his financial depredations. In conjunction with the appeal before this Court, respondent brought a motion to supplement the record to include yet another medical report from his doctor. We granted that motion. The medical report does not persuade us to a different view of the gravity of respondent's ethical infractions and of his personal responsibility and accountability for his misdeeds. The report confirms the determination that respondent misappropriated the money to finance his dual life style, which included gambling, a vacation with a paramour and extensive drinking. The doctor states only in the most conclusory fashion that respondent's life style was an "expression of [respondent's] illness," which "is a narcotic to * * * turmoil and anxiety." The letter states somewhat obscurely that "the misappropriation was both the pain (punishment) and the purchase power for the anodyne to his shattered self-esteem. Actually the misappropriation was the root of the beginning of his attempt to regain self-control."

The report does not furnish any basis grounded in firmly established medical facts for a legal excuse or justification for respondent's misappropriations. There has been no demonstration by competent medical proofs that respondent suffered a loss of competency, comprehension or will of a magnitude that could excuse egregious misconduct that was clearly knowing, volitional and purposeful.

We conclude, based upon our independent review of the record, as supplemented on the appeal before us, that mitigation is unavailing to respondent in these circumstances and cannot forestall suitable discipline. We deem disbarment to be appropriate and necessary to protect the public. *In re Wilson,* 81 *N.J.* 451 (1979). Respondent is hereby disbarred. He shall reimburse the Administrative Office of the Courts for administrative costs, including the preparation of transcripts.

*For disbarment*—Chief Justice WILENTZ, and Justices CLIFFORD, SCHREIBER, HANDLER, POLLOCK, O'HERN and GARIBALDI—7.

*Opposed*—None.

### ORDER

It is ORDERED that HOWARD L. JACOB, III of SPRING-FIELD be disbarred and that his name be stricken from the roll of attorneys of this State, effective immediately; and it is further

ORDERED that HOWARD L. JACOB, III be and hereby is permanently restrained and enjoined from practicing law; and it is further

ORDERED that HOWARD L. JACOB, III reimburse the Administrative Office of the Courts for administrative costs, including the preparation of transcripts; and it is further

ORDERED that HOWARD L. JACOB, III comply with all the regulations of the Disciplinary Review Board governing suspended, disbarred or resigned attorneys.