**In re Charles E. MEADEN, Respondent.**

**A Member of the Bar of the District of Columbia Court of Appeals.**

**No. 00–BG–1059.**

District of Columbia Court of Appeals.

Argued June 10, 2004.

Decided July 13, 2006.

---

Robert J. Pleshaw, Washington, DC, for respondent.

John T. Rooney, Assistant Bar Counsel, with whom Joyce E. Peters, Bar Counsel at the time the brief was filed, for the Office of Bar Counsel.

Before: FARRELL and REID, Associate Judges, and WAGNER, Senior Judge.*

WAGNER, Senior Judge:

Respondent, Charles E. Meaden, a member of the Bars of New Jersey, Minnesota and the District of Columbia, was suspended from the practice of law by the Supreme Court of New Jersey (New Jersey Court) for a period of three years, with a fitness requirement for reinstatement, for violations of the New Jersey Rules of Professional Conduct (NJRPC) 8.4(b) (committing a criminal act that reflects adversely on a lawyer's honesty, trustworthiness, or fitness as a lawyer) and 8.4(c) (conduct involving dishonesty, fraud, deceit, or misrepresentation).[1] After being notified, this court referred the matter to the Board on Professional Responsibility (Board) for its recommendation whether identical, greater, or lesser discipline should be imposed as reciprocal discipline.[2] Thereafter, Bar Counsel reported that it had been brought to her attention that the New Jersey Court had reprimanded respondent for improper client solicitation in an earlier proceeding. This court referred that matter to the Board for consideration with the other New Jersey suspension case. The Board

---

\* Judge Wagner was Chief Judge of the court at the time of argument. Her status changed to Senior Judge on December 21, 2005.

1. As reciprocal discipline, the Supreme Court of Minnesota suspended respondent indefinitely from the practice of law with the right to apply for reinstatement in three years. *In re Meaden*, 628 N.W.2d 129 (Minn.2001).

2. On September 21, 2000, this court suspended respondent from the practice of law pursuant to D.C. Bar R. XI, § 11(d) (providing for temporary suspension, pending final disposition of any reciprocal disciplinary proceeding, upon a showing that the attorney has been suspended or disbarred in another jurisdiction).

recommended that a three-year suspension with a fitness requirement be imposed as identical reciprocal discipline. Respondent filed an exception to the Board's report.

## I.

The factual background for respondent's suspension in New Jersey is set forth in a report to the New Jersey Court filed by its Disciplinary Review Board (NJDRB).[3] We summarize the facts briefly. Respondent was charged originally by the New Jersey Office of Attorney Ethics (NJOAE) with committing a criminal act that reflects adversely on his honesty, trustworthiness or fitness as a lawyer in violation of NJRPC 8.4(b), engaging in conduct involving fraud, dishonesty, deceit or misrepresentation in violation of NJRPC 8.4(c), and failing to inform the NJOAE of the criminal charges against him as required by N.J. Ct. R. 1:20–13(a)(1). As a result of disclosures that respondent made at a hearing before the DEC, the NJOAE filed a second complaint charging him with lying on seven applications to purchase handguns in violation of NJRPC 8.4(c). The facts supporting the charges, which are outlined herein, were not disputed in the New Jersey proceedings.

### A. *Violations of NJRPC 8.4(b) & (c) & N.J. Ct. R. 1:20–13(a)(1)*

Respondent obtained the credit card information of Laurence Rickels. Identifying himself as Gordon Grice, respondent used Rickels' credit information to order by telephone two sets of golf clubs and two golf bags which he requested be sent to a hotel in New Jersey.[4] The salesperson contacted Rickels who denied having authorized the purchase. The salesperson then alerted the hotel in New Jersey that it might receive merchandise that had been obtained fraudulently. The desk manager notified the local police, and the police set up a "sting" operation by arranging for the delivery of the golf equipment to the hotel. On the scheduled delivery date, a police detective arrested respondent as he was leaving the hotel with the packages and placed him under arrest. At the time of respondent's arrest, the police found in his possession business cards in the name of "Rickles, Grice & Nappa, LLC, Media Advisors, Gordon D. Grice, Vice President."[5] Based on these circumstances, respondent was indicted for criminal attempt, in violation of N.J. Stat Ann. § 2C:5–1,[6] and receiving stolen property,

---

3. The NJDRB's recommendation was preceded by a recommendation for discipline filed by the District XIII Ethics Committee (DEC).

4. Although it is not clear how respondent obtained Rickels' credit card information, it was ascertained that both had made purchases within minutes of each other in a store in California, where respondent was vacationing.

5. The police also found on respondent mail addressed to other individuals and credit card statements of two people who resided in Mendham, New Jersey. However, no criminal or ethics charges were filed related to this material.

6. This section states, in part:

a. Definition of attempt. A person is guilty of an attempt to commit a crime if, acting with the kind of culpability otherwise required for commission of the crime, he:

(1) Purposely engages in conduct which would constitute the crime if the attendant circumstances were as a reasonable person would believe them to be;

(2) When causing a particular result is an element of the crime, does or omits to do anything with the purpose of causing such result without further conduct on his part; or

(3) Purposely does or omits to do anything which, under the circumstances as a reasonable person would believe them to be, is an act or omission constituting a substantial step in a course of conduct

in violation of N.J. STAT. ANN. § 2C:20–7.[7] Respondent was accepted into a pretrial intervention program. He did not inform the NJOAE of the criminal charges as required by N.J. Ct. R. 1:20–13(a)(1) (requiring an attorney charged with an indictable offense to promptly inform the Director of the Office of Attorney Ethics in writing of the charge, and thereafter, the disposition). Respondent contended at the hearing that he had been instructed by counsel not to discuss the charges with anyone.

Respondent admitted in the disciplinary proceeding the attempted theft, although he could not recall many of the details. He acknowledged a strong interest in golf, but he could not explain why he tried to buy the golf clubs when he already owned three sets and had not played for some time. Similarly, respondent had no explanation for, and claimed no knowledge of his possession of the mail, credit card statements, catalog and a motor vehicle registration belonging to others found on him when he was arrested. Based on the foregoing, the DEC found that respondent violated NJRPC 8.4(b) and (c) as charged in the complaint.

## B. *Second NJRPC 8.4(c) Violation*

At a hearing before the DEC, respondent testified that when he applied for a firearms purchaser identification card, he failed to disclose on the application that he had a psychiatric history. The application inquired: (1) whether the applicant had ever been confined to a mental institution or hospital for treatment or observation of a mental or psychiatric condition; and (2) whether the applicant had ever been "attended, treated or observed by any doctor or psychiatrist or at any hospital or mental institution on an in-patient or out-patient basis for any mental or psychiatric condition." Although respondent had been institutionalized involuntarily in 1980 and treated for depression by psychiatrists since at least 1973, he did not disclose the information in response to these questions. Further, on seven separate applications for permits to purchase handguns, he answered the same questions in the same manner. Respondent claimed that his psychiatrists had told him that he could properly answer the questions in the negative. The DEC rejected respondent's explanation and found that respondent lied on the applications, thus violating NJRPC 8.4(c).

## C. *Mitigation Evidence*

In mitigation, respondent presented evidence that he suffered from bipolar

---

planned to culminate in his commission of the crime.

7. This section states:
   a. Receiving. A person is guilty of theft if he knowingly receives or brings into this State movable property of another knowing that it has been stolen, or believing that it is probably stolen. It is an affirmative defense that the property was received with purpose to restore it to the owner. "Receiving" means acquiring possession, control or title, or lending on the security of the property.
   b. Presumption of knowledge. The requisite knowledge or belief is presumed in the case of a person who:

(1) Is found in possession or control of two or more items of property stolen on two or more separate occasions; or
(2) Has received stolen property in another transaction within the year preceding the transaction charged; or
(3) Being a person in the business of buying or selling property of the sort received, acquires the property without having ascertained by reasonable inquiry that the person from whom he obtained it had a legal right to possess and dispose of it; or
(4) Is found in possession of two or more defaced access devices.

disorder. He offered a history of the psychiatrists who had treated him. He presented as an expert witness, Dr. Robert L. Goldstein, a psychiatrist, who confirmed the bipolar diagnosis, with periods of "hypomania or mania," characterized by grandiose feelings, reckless stock market speculation leading to substantial financial losses, increased sociability, impulsive shopping sprees, sleeplessness, unbounded energy and unrealistic optimism about himself and his abilities. Dr. Goldstein opined that when respondent was taken off the drug Zoloft by his treating physician, the absence of the drug precipitated a manic episode in April 1996. The expert testified that, during the trip to California, respondent displayed classic symptoms of the onset of a manic episode. He further testified that antisocial behavior often accompanies manic episodes. Dr. Goldstein testified that although respondent knew what he was doing when he committed the attempted theft, he could not control his behavior because of his "manicky condition." He added, however, that respondent was not insane under the *McNaughten* test because he knew that he was trying to acquire the golf clubs using someone else's credit card and he knew that it was wrong to do so.

At the request of the NJOAE, respondent was examined by another psychiatrist, Dr. Daniel P. Greenfield. While Dr. Greenfield agreed with the bipolar disorder diagnosis, he disagreed with respondent's expert's conclusion that respondent was "out of control," and therefore, not responsible for his actions. He noted that there was no indication in the treatment notes that respondent exhibited symptoms of uncontrolled mania on his last office visit before the attempted theft. Dr. Greenfield testified that, although respon-dent was in a vulnerable state because his treating doctor had discontinued his prescription for Zoloft and had not yet prescribed Lithium, respondent knew what he was doing when he attempted to obtain the golf equipment by using someone else's credit card and that he understood it was wrong for him to do so.

Based on the evidence, the DEC found that respondent's conduct was knowing, volitional, purposeful and that there had been no break from reality or loss of competency, comprehension or will. Therefore, it concluded that the respondent had not met the standard required for proof of mitigation under *In re Jacob*, 95 N.J. 132, 469 A.2d 498, 501 (1984) (stating that an attorney must present "competent medical proofs that [he or she] suffered a loss of competency, comprehension or will of a magnitude that could excuse egregious misconduct that was clearly knowing, volitional and purposeful").

### D. *Decision of the New Jersey Disciplinary Review Board*

The NJDRB reviewed the DEC's recommendation *de novo*. After argument, respondent requested a copy of the oral argument transcript, and it was discovered that the argument had not been recorded. Therefore, the case was reargued. Before the second argument, the Superior Court of New Jersey, Somerset County, entered an order expunging from court and law enforcement agency records any information relating to respondent's arrest for the attempted theft of the golf clubs. In light of the expungement order, respondent argued that the criminal charges should not be considered in the disciplinary proceeding. Respondent filed a motion to exclude the expunged records from consideration by the NJDRB based on N.J. STAT. ANN. § 2C:52-27 which provides that an arrest is deemed not to have occurred following

an expungement order. The NJDRB held that the order expunging the records of the arrest or conviction did not require the exclusion of the facts surrounding the arrest or conviction in the disciplinary proceeding. The NJDRB found that the New Jersey Court (and the NJDRB) may consider an attorney's criminal background despite the entry of an expungement order.

The NJDRB found clear and convincing evidence that respondent had committed the charged ethics violations. It found that respondent's proofs regarding purported mitigation relating to his bipolar disorder fell short of the standard set forth in *Jacob, supra,* 469 A.2d at 501. The NJDRB found that respondent's conduct, not the illness, formed the basis for the imposition of discipline. It also rejected respondent's claim that because of his bipolar disorder, he could not be disciplined based on the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq.*

A majority of the NJDRB recommended that respondent be suspended for three years and be required to demonstrate proof of fitness, as attested to by a mental health professional.[8] Three members, who would have imposed disbarment, dissented. The New Jersey Court adopted the recommendation of the NJDRB majority and suspended respondent for three years with a fitness requirement. Respondent did not notify Bar Counsel of the order of suspension as required by D.C. Bar R. XI, § 11(b).

## II.

Respondent opposed the imposition of reciprocal discipline and sought a *de novo* hearing in this jurisdiction on the grounds

that his due process rights were violated in the New Jersey proceeding and there was an infirmity of proof in that discipline in New Jersey was based on expunged criminal charges. He further contended that: (1) the New Jersey reprimand was influenced by a prior reprimand he received in New Jersey for conduct that does not constitute misconduct in the District; (2) assuming reciprocal discipline is warranted, substantially different discipline of probation with conditions should be imposed under *In re Kersey,* 520 A.2d 321 (D.C.1987); and (3) the imposition of reciprocal discipline violated the ADA. The Board concluded that respondent received due process in the New Jersey proceedings, that the ADA does not bar the imposition of reciprocal discipline, that respondent's actions constitute misconduct in the District of Columbia, and that respondent did not meet the standard for mitigation in New Jersey and that identical reciprocal discipline should be imposed. Concluding that the three-year suspension with fitness imposed in New Jersey is within the range of sanctions that would be imposed for similar misconduct in the District of Columbia, the Board recommended identical reciprocal discipline. With the exception of his arguments based on the ADA and the prior reprimand, respondent asserts the same arguments before this court as he did before the Board.

## III.

■ Respondent argues that reciprocal discipline should not be imposed in this case because the NJDRB based its decision on his expunged criminal records. He contends that the NJDRB's action in this

---

8. The NJDRB considered respondent's mental health condition in mitigation, and it considered as an aggravating factor respondent's pattern of denying responsibility for his actions. It also considered that respondent had a prior reprimand for improper solicitation of clients.

regard was contrary to New Jersey law, and therefore, denied him his due process rights. Bar Counsel, in support of the Board's position, argues that: (1) the NJDRB considered and rejected respondent's due process argument; (2) the NJDRB concluded that New Jersey law does not preclude consideration of the facts underlying the expunged criminal charges; and (3) the NJDRB's decision, insofar as based on the facts underlying the criminal charges, is also consistent with case precedent in this jurisdiction.

### A. *Applicable Legal Principles*

Under D.C. Bar R. XI, § 11(c), there is a " 'rebuttable presumption that the discipline will be the same in the District of Columbia as it was in the original disciplining jurisdiction.' " *In re Krouner,* 748 A.2d 924, 927 (D.C.) (quoting *In re Zilberberg,* 612 A.2d 832, 834 (D.C.1992)) (other citation omitted), *cert. denied,* 531 U.S. 993, 121 S.Ct. 484, 148 L.Ed.2d 457 (2000). However, reciprocal discipline will not be imposed if one of the following exceptions exist:

(1) The procedure elsewhere was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or

(2) There was such infirmity of proof establishing the misconduct as to give

rise to the clear conviction that the Court could not, consistently with its duty, accept as final the conclusion on that subject; or

(3) The imposition of the same discipline by the Court would result in grave injustice; or

(4) The misconduct established warrants substantially different discipline in the District of Columbia; or

(5) The misconduct elsewhere does not constitute misconduct in the District of Columbia.

D.C. Bar R. XI, § 11(c)(1)-(5).

At the time relevant to this case, New Jersey had in effect a statute providing for expungement of criminal records that is quoted in the margin of this opinion.[9] Applying this statute, in New Jersey, it has been held that a licensing agency, the New Jersey Real Estate Commission, was not required to comply with an expungement order by its terms or by statute. *E.A. v. New Jersey Real Estate Comm'n,* 208 N.J.Super. 65, 504 A.2d 1213, 1215 (App. Div.1986). In *E.A.,* the court explained that this limitation "is consistent with the statutory definition of expungement, *i.e.,* the extraction and isolation of records on file within 'any court, detention or correctional facility, law enforcement or criminal justice agency.' " *Id.* (quoting *N.J.S.A.* 2C:52–1a defining "expungement."). E.A.

---

9. The New Jersey statute stated in pertinent part:

[u]nless otherwise provided by law, if an order of expungement is granted, the arrest, conviction and any proceedings related thereto shall be deemed not to have occurred, and the petitioner may answer questions relating to their occurrence accordingly, *except as follows:*

a. The fact of an expungement, sealing or similar relief shall be disclosed as provided in section 2C:52–8b.

b. The fact of an expungement of prior charges which were dismissed because of the person's acceptance into and successful

completion of a supervisory treatment or other diversion program shall be disclosed by said person to any judge who is determining the propriety of accepting said person into a supervisory treatment or other diversion program for subsequent criminal charges; and

c. Information divulged on expunged records shall be revealed by a petitioner seeking employment within the judicial branch or with a law enforcement or corrections agency and such information shall continue to provide a disability as otherwise provided by law.

N.J. Stat. Ann. § 2C:52–27.

argued that there was an inequity in permitting the licensing agency to maintain and use records of crimes considered not to have occurred elsewhere by virtue of this statute. *Id.* The New Jersey court rejected this argument, explaining that the remedy for any inequity in the law rests with the legislature. *Id.*

■ "It has long been recognized in this jurisdiction that the trial court has equitable authority to expunge arrest records." [10] *Rezvan v. District of Columbia,* 582 A.2d 937, 938 (D.C.1990) (citing *Irani v. District of Columbia,* 272 A.2d 849, 851 (D.C.1971); *Sullivan v. Murphy,* 156 U.S.App.D.C. 28, 58, 478 F.2d 938, 968, *cert. denied,* 414 U.S. 880, 94 S.Ct. 162, 38 L.Ed.2d 125 (1973)) (other citation omitted). This authority may be exercised when " 'necessary and appropriate in order to preserve basic legal rights.' " *Id.* (quoting *Sullivan,* 156 U.S.App. D.C. at 58, 478 F.2d at 968). Although we have not considered the effect of an order of expungement of the type presented here on disciplinary proceedings, we have considered whether the court's authority to impose professional discipline is nullified in an analogous context. *See In re Abrams,* 689 A.2d 6, 7 (D.C.) (en banc), *cert. denied,* 521 U.S. 1121, 117 S.Ct. 2515, 138 L.Ed.2d 1017

(1997). In *Abrams,* a majority of the en banc court held that a presidential pardon does not nullify the court's authority to impose professional discipline based upon a lawyer's underlying conduct. *Id.* at 7, 11, 19.

### B. *Analysis*

■ Considering the facts of this case in light of the foregoing legal principles, we reject respondent's argument that the NJDRB's use of the facts surrounding the expunged offenses violated his due process rights and resulted in an "infirmity of proof" establishing the misconduct. " 'Due process is afforded when the disciplinary proceeding provides adequate notice and a meaningful opportunity to be heard.' " *In re Edelstein,* 892 A.2d 1153, 1157 (D.C. 2006) (quoting *In re Day,* 717 A.2d 883, 886 (D.C.1998) (citation omitted), *cert. denied,* 527 U.S. 1005, 119 S.Ct. 2341, 144 L.Ed.2d 238 (1999)). The record of the New Jersey proceeding shows that respondent had notice and a meaningful opportunity to be heard on the issues he now raises. He does not appear to claim otherwise. Rather, respondent seeks to litigate anew the issues he raised and lost before the NJDRB. Relitigation of the issues in this jurisdiction would be inconsistent with

---

10. Although by statute, only the Mayor is empowered to order destruction of arrest records, *see* D.C.Code § 4–137 (1981), recodified at D.C.Code § 5–113.07 (2001), equitable relief will be granted in certain circumstances. *See District of Columbia v. Hudson,* 404 A.2d 175, 177, 179 (D.C.1979) (en banc) When an arrest did not result in prosecution, the moving party must show "by clear and convincing evidence that the crime for which he was arrested did not occur or that he did not commit it." *Id.* at 182. After trial, the moving party has the additional burden of "establish[ing] the existence of some other circumstance that would make it manifestly unjust to decline to seal the arrest record in question." *Sepulveda–Hambor v. District of Columbia,* 885 A.2d 303, 307 (D.C.2005) (quoting *Rez-*

*van, supra,* 582 A.2d at 938). The standard is high because of the need to balance society's interest in maintaining records of such events against the individual's interest in having the records corrected.

There is no local statute providing generally for expungement of criminal records. However, there are certain criminal statutes that provide for the expungement of criminal records when the offender completes specified statutory requirements. *See e.g.,* D.C.Code § 48–904.01(e)(1) (2001). The Superior Court has by rule implemented expungement procedures to be used in such cases. *See* Super. Ct.Crim. R. 32(f) (providing for dismissal of proceedings and expungement of official records pursuant to D.C.Code § 48–904.01(e) (2001)).

principles of collateral estoppel. *See In re Benjamin,* 698 A.2d 434, 440 (D.C.1997) (noting that "[u]nder principles of collateral estoppel, in reciprocal discipline cases we generally accept the ruling of the original jurisdiction...."). Such a course would also be inconsistent with the rationale underlying the rigid standard imposed in reciprocal discipline cases for avoiding identical discipline. *See In re Velasquez,* 507 A.2d 145, 146–47 (D.C.1986) (contrasting our standard of review of the Board's recommendation in a disciplinary case with the more rigorous standard of review in reciprocal discipline cases). In *Velasquez,* we explained that

> [t]he rationale behind the use of a more rigid standard in reciprocal discipline cases is plain. First, another jurisdiction has already afforded the attorney a disciplinary procedure that includes notice, an opportunity to be heard, sufficient proof of misconduct, and a determined sanction. There is no need for a de novo repetition of the entire process, and the burden of persuasion is reversed. Second, there is merit in the idea of granting due deference—for its sake alone—to the opinions and actions of a sister jurisdiction with respect to attorneys over whom we share supervisory authority.

*Id.* at 147.

Respondent has presented no persuasive reason for this court to reject the decision of the New Jersey Court which adopted the recommendation of the NJDRB. The NJDRB's decision is consistent not only with the law of New Jersey, but also with established principles in this jurisdiction. In rejecting respondent's arguments, the NJDRB summarized its well supported conclusions as follows:

> [New Jersey] case law holds that expungement orders do not extend to licensing agencies; the Court has disciplined an attorney for a criminal offense, despite the entry of an expungement order; the Court requires applicants to the bar to disclose fully their criminal backgrounds, even if expungement orders have been obtained; [11] respondent stipulated to the admission into evidence of the material he now seeks to exclude; and respondent waived any right to exclude the evidence, to strike the material from our files and to prevent us from publishing the facts surrounding respondent's arrest.

The NJDRB's decision is consistent with New Jersey law as interpreted in *E.A., supra,* upon which the NJDRB relied, in part, for its holding.

Moreover, in determining that respondent had committed ethics violations, the NJDRB relied upon the facts underlying the expunged charges and not simply the fact of his conviction of those charges. As the NJDRB observed, although the New Jersey statute provides for the expungement of records of arrest or conviction, it does not require the exclusion from consideration by the disciplinary authorities of the facts surrounding the arrest or conviction. In the New Jersey disciplinary proceeding, respondent admitted the attempted theft, and he stipulated to the admission into evidence of investigative reports that contained information about the facts and circumstances surrounding his arrest. The NJRBD deemed an attorney's criminal conduct to be properly sub-

---

11. *See In re Application of McLaughlin,* 144 N.J. 133, 675 A.2d 1101, 1103 & 1103 n. 1 (1996) (noting the requirement that New Jersey Bar applicants file a certified statement with the Committee on Character that includes responses to questions related to arrests, convictions, or law violations even though subject to an expungement or sealing order).

ject to scrutiny whether or not it remains the subject of a criminal conviction because it reflects no less on the attorney's fitness to practice law and because of its importance in maintaining public confidence in the profession.

As previously stated, the foregoing rationale is consistent with principles expressed in the case law of this jurisdiction. In *Abrams, supra,* this court held that a presidential pardon for a criminal offense does not nullify the court's authority to impose discipline for the underlying conduct. 689 A.2d at 7. Based on the findings of a Hearing Committee, the Board concluded "that Abrams had engaged in 'dishonesty, deceit or misrepresentation' by giving false (but unsworn) testimony to the three Congressional Committees regarding the role of the United States government in what has become known as the Iran–Contra Affair." *Id.* at 6. The en banc court reasoned that truthfulness and candor are important qualifications for Bar membership and that the pardon itself does not require the court to close its eyes to what the attorney had done. *Id.* at 7. Elaborating further, this court stated that, "[t]he pardon could not 'reinvest [Abrams] with those qualities which are absolutely essential for an attorney at law to possess or rehabilitate him in the trust and confidence of the court.'" *Id.* (quoting *In re Lavine,* 2 Cal.2d 324, 41 P.2d 161, 163 (1935) (citation omitted)).

Similarly, this court has disciplined an attorney for conduct constituting a criminal act, although he was not convicted of a crime, under Rule 8.4(b) (committing a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects) and Rule 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation). *See In re Slattery,* 767 A.2d 203, 205 (D.C.2001). In *Slattery,* this court reasoned that the disciplinary rule itself does not require conviction for application, and "an attorney is not immune from discipline under the Rule 8.4 merely because a complainant or prosecuting authority has chosen not to bring criminal charges." *Id.* at 207. The same rationale applies to the circumstances of this case.

■ In summary, respondent has failed to show that he was denied due process in the New Jersey disciplinary proceeding. He had notice and an opportunity to present his arguments in New Jersey where the New Jersey Court, adopting the report and recommendation of the NJDRB, rejected them based on persuasive authority that New Jersey's expungement statute does not extend to the Bar disciplinary authority or preclude discipline based upon the underlying misconduct. We also find persuasive that (1) respondent's discipline in New Jersey was based upon conduct that was proved by his own admission and evidence admitted pursuant to his stipulation, and (2) discipline on the basis of the underlying conduct is consistent with principles enunciated in the case law in both New Jersey and in this jurisdiction. Therefore, respondent has failed to show that the NJDRB's use of the facts surrounding the expunged offenses violated his due process rights or resulted in some "infirmity of proof" establishing the charges.[12]

---

12. Respondent also argues that the "complaint" should be dismissed altogether and that he should be reinstated without restriction because of the Board's delay in issuing its report and recommendation. Bar Counsel responds by pointing out that all of respon-

dent's pleadings were filed late, that his motions resulted in collateral proceedings, and that, in spite of notifications by the Board and Bar Counsel, respondent failed to file his D.C. Bar R. XI, § 14(g) affidavit until January 22, 2003, which remained incomplete when the

## IV.

■ Respondent argues that this court should reject the Board's recommendation for imposition of the same sanction as the New Jersey court. He contends that he would have prevailed on his claim of mitigation of sanction under the standard set forth in *Kersey, supra,* 520 A.2d at 327. He also contends that the sanction imposed in New Jersey was unduly harsh and inconsistent with sanctions for similar violations in the District. Bar Counsel, consistent with the Board's conclusion, argues that respondent had a full opportunity to assert his mitigation claim in New Jersey where the NJDRB concluded, after hearing conflicting expert testimony, that his illness did not excuse his misconduct under the required standard of proof in that jurisdiction. Bar Counsel argues that this court should accept New Jersey criteria under principles of collateral estoppel. Further, Bar Counsel argues that lesser discipline is not warranted in this case even though New Jersey's criteria for disability mitigation differ from the *Kersey* standard.

### A. *Applicable Legal Principles*

■ In a reciprocal discipline proceeding, there is a rebuttable presumption that identical discipline will be imposed if the originating jurisdiction's sanction falls within the range that might be imposed if the case originated in this jurisdiction. *In re Berger,* 737 A.2d 1033, 1039–40 (D.C. 1999) (citations omitted); *In re Hallock,* 702 A.2d 1258, 1259 (D.C.1997) (citing *In re Gardner,* 650 A.2d 693 (D.C.1994); D.C. Bar R. XI, § 11). Therefore " 'we will generally defer to the original disciplinary court in its choice of an appropriate sanction, even when that sanction would not otherwise be available in the District of Columbia.' " *Berger,* 737 A.2d at 1040 (quoting *In re Garner,* 636 A.2d 418, 420 (D.C.1994)). In order to rebut the presumption that identical discipline should be imposed, the attorney must demonstrate by clear and convincing evidence that his case falls within one of five exceptions specified in D.C. Bar Rule XI, § 11(c).[13] Essentially, respondent seeks to show that identical discipline should not be imposed under the exception set forth in Rule XI, § 11(c)(4) ("[t]he misconduct established warrants substantially different discipline in the District of Columbia.").

### B. *The Kersey Mitigation Claim*

In support of his argument against identical discipline, respondent first contends that he meets the standard for mitigation of sanction under this court's decision in *Kersey, supra.* In this jurisdiction, the *Kersey* standard requires proof that "but for [respondent's] [disabling condition], his misconduct would not have occurred." *Kersey,* 520 A.2d at 327 (staying execution of disbarment and imposing five years probation where attorney proved the requisite nexus between his alcoholism and the misconduct and rehabilitation); *see also In re Temple,* 596 A.2d 585, 590 (D.C.1991) (holding that the *Kersey* rule applies in a case involving an attorney's addiction to prescription drugs legally obtained). Subsequently, we held that in order to invoke a *Kersey* defense, an attorney must meet the following three-pronged test: "(1) prove by clear and convincing evidence that he suffered from an alcoholism-in-

Board issued its report in July 2003. Considering all of these circumstances, we agree that this is not a case in which the delay prejudiced respondent or denied him due process.

13. See pages 808–809, *supra.*

duced impairment at the time he [engaged in the misconduct]; and if so, (2) prove by a preponderance of the evidence that the alcoholism substantially caused him to engage in that misconduct; and (3) prove by clear and convincing evidence that he now is substantially rehabilitated." *In re Stanback,* 681 A.2d 1109, 1114–15 (D.C.1996) (citations and internal footnote omitted).

In the New Jersey proceeding, the NJDRB applied its own standard for determining whether respondent's mental condition warranted mitigation of sanction. That standard, referred to as the *Jacob* standard, requires the attorney to "demonstrat[e] by competent medical proofs that [he or she] suffered a loss of competency, comprehension or will of a magnitude that could excuse egregious misconduct that was clearly knowing, volitional and purposeful." *Jacob, supra,* 469 A.2d at 499, 501 (rejecting an attorney's claim that his condition, thyrotoxicosis ("described as a state of intoxication due to excessive or abnormal activity to the thyroid gland") was causally connected to his disciplinary violation, *i.e.,* misappropriation); *In re Greenberg,* 155 N.J. 138, 714 A.2d 243, 252 (1998) (applying the *Jacob* standard where an attorney sought mitigation of sanction for misappropriation based upon mental illness), *cert. denied,* 526 U.S. 1132, 119 S.Ct. 1807, 143 L.Ed.2d 1011 (1999). Respondent argues that, applying the *Kersey* standard, he established grounds for mitigation of sanction, *i.e.,* a disability that substantially affected his misconduct and rehabilitation. He contends, therefore, that this jurisdiction should not impose any more than probation.

The flaw in respondent's argument is that "[u]nder principles of collateral estoppel, in reciprocal discipline cases we generally accept the ruling of the original jurisdiction, even though the underlying sanction may have been based on a different rule of procedure or standard of proof." *Benjamin, supra,* 698 A.2d at 440. Although the *Jacob* standard differs somewhat from the *Kersey* standard, that distinction alone is not sufficient in itself to avoid reciprocal discipline. *See Benjamin,* 698 A.2d at 439–40 (concluding that New York's "fair preponderance" standard of proof in disciplinary cases provides no basis in itself to avoid reciprocal discipline in this jurisdiction which uses the higher "clear and convincing evidence" standard). Respondent has provided no persuasive reasons why we should depart from general principles of collateral estoppel and reject reciprocal discipline in this case.

After weighing conflicting expert evidence concerning respondent's mental condition, the NJDRB accepted the opinion of Dr. Daniel Greenfield that respondent's condition and the fact that he was between medications "did not so impair Mr. Meaden's basic cognitive and thought processes (for engaging in planned, purposeful, careful, and other such behaviors) as to have prevented him from doing so." The NJDRB found, based on Dr. Greenfield's testimony, that in spite of respondent's condition, he "knew what he was doing when he attempted to obtain golf equipment using someone else's credit card and he understood that it was wrong to do so." Even respondent's own expert testified, the NJDRB observed, that "he was aware of the nature of his actions and knew that they were wrong." Therefore, the NJDRB concluded that respondent failed to meet the *Jacob* standard warranting excusing the misconduct or mitigating sanction. In other words, the medical evidence credited by the NJDRB did not establish that respondent "suffered a loss of competency, comprehension or will of a magnitude that could excuse egregious misconduct that was clearly knowing, voli-

tional and purposeful." [14] *Jacob, supra,* 469 A.2d at 501. Respondent had a full opportunity to present evidence to meet the standard for mitigation of sanction in New Jersey and failed to do so. He cannot avoid reciprocal discipline by attacking collaterally the New Jersey tribunal's factual findings and application of that jurisdiction's law to the facts of the case. *Benjamin, supra,* 698 A.2d at 440. For these reasons, we must reject respondent's challenge.

### C. The "Substantially Different Discipline" Exception

■ Respondent also argues that substantially different discipline is warranted because more serious misconduct has resulted in less severe sanctions in other cases in the District. In determining whether Rule XI, § 11(c)(4)'s "substantially different discipline" exception applies, we consider: (1) whether the misconduct would have resulted in the same punishment in the District; and (2) if the sanction would have been different, whether it is substantially so. *In re Garner,* 576 A.2d 1356, 1357 (D.C.1990) (citations omitted). In this context, the question is whether the upper range of any sanction here would be *"substantially* different" from the sanction

imposed in New Jersey. *Id.* (emphasis added).

The Board determined that a three-year suspension with a fitness requirement is within the range of sanctions that would be imposed for similar misconduct here. Its conclusion is supported by our case law. In *Slattery, supra,* as in the present case, an attorney was disbarred for violations of Rule 8.4(b) (committing a criminal act that adversely reflects on the lawyer's honesty, trustworthiness, or fitness) and Rule 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation).[15] *Id.* at 219. Similarly, an attorney was disbarred for violating the same two disciplinary rules in *In re Gil,* 656 A.2d 303 (D.C. 1995).[16] In *Berger, supra,* this court imposed identical reciprocal discipline, a two-year suspension with a fitness requirement, where the New Jersey disciplinary authority found that Berger violated Rules 8.4(b), 8.4(c) and 8.4(d) (conduct prejudicial to the administration of justice). 737 A.2d at 1042–43, 1046. In *Berger,* we observed that the two-year suspension imposed in New Jersey for Berger's violations fall squarely within the range of discipline imposed in other cases in this jurisdiction. *Id.* at 1042. Thus, a three-year suspension with a fitness requirement for reinstate-

**14.** In determining whether an attorney lacked competency, comprehension or will in this context, consideration is given to whether the attorney was "out of touch with reality or unable to appreciate the ethical quality of his [or her] acts." *Greenberg, supra,* 714 A.2d at 252 (quoting *In re Bock,* 128 N.J. 270, 607 A.2d 1307, 1309 (1992)).

**15.** In *Slattery,* respondent violated Rule 8.4(b) by intentionally appropriating for his personal use the funds of another to which he was not entitled, and the court concluded that his actions in that regard "constitutes a 'criminal act' that negatively reflects on Slattery's 'honesty, trustworthiness [and] fitness as a lawyer.' " *Slattery, supra,* 767 A.2d at 213. The finding that Slattery violated Rule 8.4(c) was

based on his active concealment of the transactions when inquiry was made and his deposition testimony that was false and misleading. *Id.* at 214.

**16.** In *Gil, supra,* the attorney was disciplined for a violation of Rule 8.4(b) where he engaged in conduct that would constitute theft under local law by appropriating funds entrusted to him by a friend without her knowledge or consent and using them to purchase an automobile and for other personal obligations. *Id.* at 304–05. Gil's violation of Rule 8.4(c) was based on a finding that he had created false documents that he had falsely notarized and misrepresented his authority to two banks in order to obtain the funds. *Id.* at 306.

ment imposed by New Jersey falls within the range of discipline imposed in *Slattery*, *Gil*, and *Berger*. Since disbarment is the most serious sanction, the recommended discipline here falls below the upper range of sanction in other cases. Under these circumstances, respondent cannot meet Rule XI, § 11(c)(4)'s "substantially different" discipline exception. *See Garner, supra*, 576 A.2d at 1357.

### D. *Conditions of Reinstatement*

The Board recommended that respondent be suspended for three years, with a requirement that he prove fitness and compliance with the conditions of the New Jersey disciplinary sanction, including certification that he has completed a course approved by the NJOAE within one year of reinstatement. The Board also recommended that the suspension should run from January 22, 2003, the date that respondent filed an affidavit in compliance with D.C. Bar R. XI, § 14(g), provided that he supplement it within ten (10) days of the Board's report with a supplemental affidavit "[l]isting all other state and federal jurisdictions and administrative agencies to which [Respondent] is admitted to practice" and "stating the residence or other address to which communications may thereafter be directed." Although respondent did not file his supplemental affidavit until August 13, 2003, Bar Counsel does not object to the suspension running from January 22, 2003, since respondent substantially complied with the Board's order by seeking leave of court to file the additional information out of time. Considering the information provided, we will adopt the recommendation of the Board and Bar Counsel in this regard.[17]

### IV.

In light of the foregoing, we adopt the Board's recommended disposition and suspend respondent from the practice of law for a period of three years, commencing from January 22, 2003, with a requirement that he prove fitness to practice and that he has complied with the other conditions imposed by New Jersey, including specifically that he has completed a skills and methods course approved by the NJOAE within one year of his reinstatement.[18]

*So ordered.*

---

17. The Board noted that if respondent is summarily reinstated in New Jersey, he is eligible to file a motion to vacate the fitness requirement in this jurisdiction. *See In re Berger*, 766 A.2d 997, 998 & 998 n. 1 (D.C.2001) (accepting Bar Counsel's proposal that the suspended attorney be reinstated once the attorney had demonstrated fitness to practice in a summary proceeding satisfactory to New Jersey, the original disciplining jurisdiction, absent objection by Bar Counsel that the attorney did not meet the criteria set forth in *In re Roundtree*, 503 A.2d 1215, 1217 (D.C. 1985)).

18. In addition to proof of fitness and completion, within one year of reinstatement of a Skills and Methods course offered by the Institute for Continuing Legal Education, the New Jersey Court ordered that respondent practice under the supervision of a practicing attorney approved by the NJOAE for a period of two years or until further Order of the Court. This court will defer consideration of whether to require that respondent practice under a practice monitor until it considers his request for reinstatement.