RETIAH D. JONES *vs.* FRANCIS SKINNER and others.

*Pleading. Flowage—complaint must state defendant's ownership, or occupancy, of mill-site.*

A complaint for flowage under R. S., c. 92, § 1, containing no allegation of defendants' ownership of the land on which the dam causing the flowage was erected, held bad on demurrer.

ON EXCEPTIONS.

This is a complaint for flowage of complainant's land in Webster, caused by the erection of a dam, in 1869, by the defendants, on Sabattus river. The complaint, drawn under the first section of chap. 92 of the Revised Statutes, stated that Francis Skinner & Co., the defendants, erected and maintained certain water-mills, described, and a dam for the working of the same, and gave a particular description of the premises flowed, and of the damages suffered, but did not allege the mills and dam to be built or maintained upon the defendants' own land. The defendants filed a general demurrer, which was joined, and this omission was stated as the ground of demurrer. The presiding justice overruled the demurrer, and defendants excepted.

*Frye & Cotton*, in support of the exceptions and demurrer, called attention to the changes in the phraseology of the various statutes in this State and Massachusetts, regulating the erection of dams.

Acts of 1714, chap. 111, Ancient Laws and Charters, 404–5; Laws of Maine, A. D. 1821, c. 45; R. S. of 1841, c. 126, § 1; Acts of 1855, c. 133; R. S. of 1857, c. 92, § 1; R. S., c. 92, § 1; Washburn on Easements, 395, 403; Mass. Gen'l Statutes, c. 149; R. S. of Rhode Island, c. 88, § 1; *Bates* v. *Weymouth Iron Co.*, 8 Cush. 553; *Farrington* v. *Blish*, 14 Maine, 423; *Prescott* v. *Curtis*, 42 Maine, 64.

*S. & J. W. May,* for complainant. Respondent's counsel have stated the case and presented question very fairly in their argument; it is simply, whether or not, in a case like the one at bar, it is essential to allege in the complaint, that the mills and dams are erected on defendants' "own land." The second section of c. 45, Laws of 1821, limits the remedy expressly to facts stated in the first section of that Act. The fourth section of c. 92, R. S., is broader. See also R. S., c. 92, §§ 7, 12. The Act of 1821 did not take away the common-law remedy, while the existing law does. R. S., c. 92, § 23.

But we further say, that an allegation that one " erects " and " maintains " a mill and dam, raises the legal presumption that he does so upon his own land.

VIRGIN, J. At common law, any person might erect and maintain a water-mill and raise a head of water sufficient to work it by means of a dam upon his own land, so long as he kept within the salutary injunction—" *sic utere tuo ut alienum non laedas;*" but when the water raised by his dam, by force of the natural law which governs it, injured the land of the proprietors above, either by overflowing or percolation, his dam became in law a private nuisance, liable to be abated; and the owner thereof, and his agents, and servants, were subject to an action of tort, joint or several, for its erection, while successive actions on the case, for the slightest as well as the more serious injuries of this kind, were maintainable against whomsoever should continue the nuisance. *Strout* v. *Millbridge Co.,* 45 Maine, 87 ; Angell on Watercourses, § 330, and cases there cited ; *Pixley* v. *Clark,* 35 N. Y., 520.

But the province of Massachusetts Bay, in 1714, while the country was slowly progressing from a " wilderness to cultivation," and lands were of little value compared with mills which would grind corn into meal and saw logs into boards, somewhat modified this common-law principle, by enacting c. 111 of that year (An. Chart. 404), the preamble whereof declares—" Whereas it hath been found by experience, that when some persons in this prov-

ince have been at great costs and expenses for building of mills serviceable for the public good and benefit of the town or considerable neighborhood in or near to which they have been erected, that in raising a suitable head of water for that service, it hath sometimes so happened that some small quantity of lands or meadows have been thereby flowed and damnified, not belonging to the owner or owners of such mill or mills, whereby several controversies and lawsuits have arisen, for prevention whereof, for the future

" Be it enacted, etc., that where any person or persons have already, or shall hereafter set up any water-mill or mills, upon his or their own lands, or with the consent of the proprietors of such lands legally obtained, whereupon such mill or mills are or shall be erected or built, that then such owner shall have free liberty to continue and improve such pond for their best advantage, without molestation."

The next and only other section provided for the appraisal and recovery of the " yearly damage."

This act giving " owners free liberty to continue" their dams " for their best advantage without molestation," was followed by "An Act for the support and regulation of mills," being c. 74 of 1796, which, after declaring by way of preamble, that " whereas the erection and support of mills to accommodate the inhabitants of the several parts of the State ought not to be discouraged by doubts and disputes, and some special provisions are found necessary," provided :

" That when any person hath already erected, or shall erect, any water-mill on his own land, or on the land of any other person, by his consent legally obtained, and to the working of such mill, it shall be found necessary to raise a suitable head of water ; and in so doing any lands shall be flowed not belonging to the owner of said mill, it shall be lawful for the owner or occupant of such mill to continue the same head of water to his best advantage, in the manner and on the terms hereinafter mentioned."

The remaining sections provided for the appraisal, security, and recovery of the annual damage.

The first section of c. 45 A. D. 1821 of the Public Laws of Maine, is an exact transcript of the first section of c. 74 of 1796, of the Act of Massachusetts, above recited.

The effect of the statute was under a certain state of facts, to take away from the land-owner his common-law remedy for the invasion of the enjoyment of his land, which would compel the mill-owner to prostrate his dam, and by reducing his head of water, destroy the benefit of his mill; to change the tort into a statute-right authorizing the mill-owner or occupant " to continue the same head of water to his best advantage ;" and so far as it may operate an injury to the land-owner to substitute for the common-law remedy a mode of redress, *sui generis*—in the nature of a bill in equity —simple, plain, and certain, whereby all parties can have their past, present, and future rights adjusted. *Moore* v. *Shaw*, 47 Maine, 88. To this extent, the statute is in derogation of the common law, and courts do not seem inclined to extend its peculiar provisions by implication. *Jordan* v. *Woodward*, 40 Maine, 317 ; *Murdock* v. *Stickney*, 8 Cush. 113.

What, then, was the state of facts which took away the land-owner's common-law remedy for the flowing of his land, and turned him over to this statute remedy ? The answer is contained in the first section of the statute—to wit, when a man erected a mill on his own land, or on the land of another, with his consent. And such has been the decision of this court upon this precise question.

Thus, in *Farrington* v. *Blish*, 14 Maine, 425, Weston, C. J., says :—" It is a process specially given, which should contain averments of all the facts made essential by the statute, to enable the complainant to avail himself of the remedy prescribed. . . . To bring the case, therefore, within the statute, it was necessary for the complainant to set forth, that the respondents had erected a water-mill on their own land, or on the land of another with his consent, etc. . . . The complaint before us contains no averment that the respondents had erected, or caused to be erected on their own land, or on the land of any other person by his consent, any water-mill whatever. . . . The complaint, then, is clearly defective in omitting averments essential to its prosecution."

In the revision of 1841, c. 126, § 1, the words, "upon his own land, or on the land of any other person, by his consent legally obtained," were omitted, and the words, "upon and across any stream not navigable," inserted. In a complaint under this last-named statute, wherein there was no allegation that the stream across which the dam was erected, was "not navigable," the omission was held fatally defective. *Bryant* v. *Glidden*, 36 Maine, 36; *Strout* v. *Millbridge Co.*, 45 Maine, 76.

In *Prescott* v. *Curtis*, 42 Maine, 64, Tenney, C. J., in his opinion upon a complaint founded on R. S. of 1841, c. 126, § 1, which contained no allegation that the dam was built on the respondents' own land, etc., says: "Such allegations are not required in terms by the statute of 1841 as they were by that of 1821, c. 45. And on examination and comparison of the statutes, the change was obviously intended."

As has been seen, c. 126 of 1841 did not require that the dam should be erected on the owner's land; but in the subsequent revision of 1857, c. 92, this provision was restored; and we are obliged to think "the change was obviously intended." For when a statute has received a judicial construction, and is afterwards re-enacted in the same terms, it is to be understood that the legislature have thereby adopted the construction thus given it. *Myrick* v. *Hasey*, 27 Maine, 9; *Osgood* v. *Holyoke*, 48 Maine, 410.

And Prof. Washburn also seems to consider this an essential fact. Washburn on Enactments, 395, 403.

R. S. of 1871, c. 92, § 1, is an exact transcript of the same chapter and section of R. S. of 1857, quoted above.

But it is contended by the complainant that R. S. of 1871, c. 92, § 4, which provides the remedy sought by the complaint before us, is broader in its provisions than § 2 of the Act of 1821—that the latter act provided a remedy for damage to lands "flowed as aforesaid," i. e. by a dam erected as provided in § 1; while § 4 of the present statute furnishes a remedy for lands flowed by "a milldam," i. e. however erected, provided it be "across a stream not navigable." Or in other words, that the remedy is not limited to

damages caused by such a dam as is authorized by § 1.   Such was the argument urged by the complainants' counsel in *Bryant* v. *Glidden,* 36 Maine, 41, and *Strout* v. *Millbridge Co.,* 45 Maine, 78, where the complaint omitted to allege that the stream was "not navigable."   And we reply in the language of Shepley, C. J.   "The language is unlimited, . . . but this must be considered in connection with other provisions of the statute, which clearly was not designed to afford this remedy, and to protect a dam from removal as a nuisance, and to decide upon the manner in which it should be used, when it could have no legal existence.   The whole proceedings have reference to claims authorized by the statutes, and not to claims not authorized by it."   The statute authorizes " any man" to erect and maintain a water-mill and dams to raise water for working " on his own land," etc., but it does not authorize him to do it on any other person's land ; and if he does so it is a nuisance, and is not protected by c. 92.

The provisions in relation to maintaining the different processes against " an occupant" were in the Act of 1821, when *Farrington* v. *Blish* was decided.   This not being a complaint against " an occupant," but against persons, who, "on the third day of February, 1869, erected, and have ever since maintained certain water-mills, and a certain dam to raise water for working said mills," etc., we have no occasion to discuss at this time that branch of the complainant's argument.

Section 5 does not profess to provide what shall constitute a full formal complaint, but simply directs that the description of the land injured, and the statement of the damage shall be full.

*Exceptions sustained.*

APPLETON, C. J.; WALTON, DANFORTH, DICKERSON, and BARROWS, JJ., concurred.