STATE OF MAINE                          SUPERIOR COURT
PENOBSCOT, ss.                          CIVIL ACTION
                                        DOCKET NO. CV-08-65

LEWIS E. MATTESON and       )
BETTY J. MATTESON,          )
                            )
        Plaintiffs          )
                            )
        v.                  )           **ORDER**
                            )           (Title to Real Estate Involved)
MALCOLM BATCHELDER,         )
                            )
        Defendant           )



FILED & ENTERED
SUPERIOR COURT
JUN 24 2008
PENOBSCOT COUNTY

DONALD L. GARBRECI
LAW LIBRARY
JUL 18 2008

Pending before the Court is Plaintiffs' Complaint for Declaratory Relief and Motion for a Preliminary Injunction.

## Procedural History

Plaintiffs' Complaint and Motion for a Preliminary Injunction were filed on March 8, 2008. Defendant filed an Answer with affirmative defenses and an Opposition to the Preliminary Injunction on April 10, 2008.[1] A bench trial on the matter was held on June 5, 2008, where counsel for both parties argued their positions. No testimony was heard, and the parties instructed the Court to rely on the affidavits submitted. Having considered the affidavits and arguments of counsel, the Court issues this order.

## Factual Findings

Plaintiffs own real estate in Corinna, Maine, located on French's Stream. They acquired title to this property on July 29, 1993. Defendant owns real estate in Exeter, Maine, also located on French's Stream. He acquired title to this property from his

---

[1] These filings are deemed timely pursuant to the Court's April 8, 2008 Order granting Defendant's request for an extension of time to respond.

1

mother on November 5, 2002.[2] Plaintiffs' and Defendant's parcels used to be part of a larger parcel, which was conveyed from Francis Hill to Levy Stevens on August 22, 1844. The deed for this conveyance included a clause in which Mr. Hill granted to Mr. Stevens the "right to flowage on the north side of the Stream for the benefit of the mill as high as the dam is now built and as far west as the above describe lots extends."

Adjacent to Defendant's property, on French's Stream, is a dam, which at one time serviced a mill on his property. Defendant's father entered into a lease with the Town of Exeter ("Town") on August 14, 1970, which included "all the rights and privileges of flowage described in the deed from Level Stevens to Francis W. Hill..."[3] The lease included a clause requiring the Town, as the Lessee, to "keep and maintain the dam hereinafter mentioned in good condition and repair." On August 23, 1983, the lease was terminated.

The purpose of the lease between Defendant's father and the Town, and in particular, the use of the dam, is not discussed in the affidavits or counsel's briefs. The facts do not show whether the dam was maintained after the lease was terminated, though Defendant states that the dam has fallen into disrepair over the course of the last decade. There are also no facts to show that Plaintiffs' property was similarly flooded while the lease between the Town and Defendant's father was in effect.

In August 2007, the Town approved and issued a permit to Defendant for "in-kind replacement of boards on an existing dam." To date, Defendant has replaced four planks in the dam, each approximately 10 inches in height. Plaintiffs allege that Defendant's

---

[2] Defendant's mother inherited the property upon the death of Defendant's father on February 6, 1987.

[3] The Court notes that the lease has reversed the parties of the 1844 conveyance. This error does not appear to be an issue with the parties.

actions have caused the water level in French's Stream to rise and flood, damaging the soil and trees on their property. Plaintiff's Complaint seeks to enjoin Defendant from any further reconstruction of the dam.

## Analysis

### A. The Maine Waterway Development and Conservation Act

Defendant argues that Plaintiffs' claim falls within the purview of the Maine Waterway Development and Conservation Act ("Act"), 38 M.R.S.A. §§ 631 et seq; that the Act applies "to [a]ny person whose lands are damaged by being flowed by a milldam, or by the diversion of the water by such canal" 33 M.R.S.A. § 655; and that this Act limits Plaintiffs' remedy to one of damages. *Id.* While the Court agrees that the Act limits one's remedy to damages, the Court finds that the Act is not applicable here. The plain language of the Act and a review of how the Act has been interpreted supports this conclusion.

Beginning with the language of the Act itself, its purpose is "to support and encourage the development of hydropower projects." 38 M.R.S.A. § 631(2). A "hydropower project" is defined as "any development that utilizes the flow or other movement of water...as a source of electrical or mechanical power or that regulates the flow of water for the purpose of generating electrical or mechanical power." *Id.* at § 632(3). The projects contemplated by the Act are those that will produce power.

The Act allows for the building and maintaining of a "watermill and dams to raise water for working it." 38 M.R.S.A. § 651 (2008). Historically, a mill was a building with machinery for grinding grain. The term now incorporates a variety of industries. A watermill is a mill whose machinery is driven by water. "Dams to raise water for the

3

working of it," are "dams to raise water for working a mill." *Brown v. Denormandie*, 123 Me. 535, 542, 124 A.2d 697, 699 (1924). The language of the Act makes clear that the structures covered by the Act are those mills and dams constructed for the purpose of harnessing the energy of flowing water.

Further support for this purpose is found in the case law interpreting the Act. *See Central Maine Power v. Public Util. Comm'n*, 156 Me. 295, 327, 163 A.2d 762, 779 (1960) stating "the riparian proprietor may use the [water] *power* for manufacturing and industrial purposes" (emphasis added); *Clark v. Rockland Water Power*, 52 Me. 68, 78 (1860) stating "[u]nder our mill Act, riparian proprietors, who are owners of mill sites may raise a head of water, by the construction for the purpose of *working* their mills" (emphasis added); *Brown*, 123 Me. at 541, 124 A.2d at 699 stating the statute was "enacted to develop *water power* by private initiatives" (emphasis added); *See also Duncan v. New England Power Co.*, 113 NE 781, 782 (1916) explaining the term "mill" as follows: "The thing which makes or does not make the mill a water mill within [the Massachusetts Mill Act] depends upon the *power* which drives its machinery. A mill to grind corn, to saw boards, to roll iron, to manufacture goods, to generate electricity or to make any other article or thing is a water mill within R. L. c. 196, § 1, provided the motive power which drives its machinery is in whole or in part *water power* (emphasis added).

The cases that apply the Act are those where the dam or mill in question generated, or was going to generate, mechanical or electrical energy. The Act's language is clear and the case law interpreting the Act is consistent. Those with flowage rights are

4

allowed to flood the property of another only when the dam or mill in question produces electrical or mechanical power.

### B. Easement Appurtenant

The Court recognizes that Defendant may have a flowage easement on the portion of French's Stream adjacent to his property. An easement is an "interest in land owned by another person, consisting in the right to use or control the land, or an area above or below it, *for a specific purpose*." BLACK'S LAW DICTIONARY 527 (7th ed. 1999) (emphasis added); *see also Great Cove Boat Club v. Bureau of Pub. Lands*, 672 A.2d 91, 94 (Me. 1996) "An easement appurtenant is a non-possessory interest in the owner of one parcel of land...to use the land of another for a specific purpose." The specific purpose of the easement here, as stated in the 1844 deed, is "for the benefit of the mill." The purpose of flowage rights as benefiting a mill or dam is also articulated in case law. *See Trask v. Public Utilities Comm'n*, 1999 ME 93, ¶ 12, 731 A.2d 430, 432-33; *Town of Waltham v. PPL Maine, LLC*, 2006 ME 88, ¶ 10, 902 A.2d 816, 819 stating "Thus [Defendant, a hydroelectric plant] by virtue of its ownership of the flowage rights, has a right pertaining to the flooded land of the upstream landowners, which is in the nature of an easement appurtenant *that benefits the dam*." Flowage rights are not absolute; they are tied to the operation of a mill or dam and must benefit that mill or dam.

The dam Defendant seeks to restore and maintain is one for irrigation, fire fighting, and recreational purposes. Such uses are not within the specific purpose of the easement set forth in the 1844 deed. While the community may benefit from this excess water, Defendant's project does not benefit a mill or dam. Accordingly, Defendant's easement cannot legitimize the flooding that has occurred on Plaintiffs' land.

5

## C. Equitable Relief

Because neither the Act or Defendant's easement is invoked, common law applies. "At common law, a dam[4] that flooded the lands of upstream landowners was a private nuisance that rendered its owner vulnerable to an action in tort for damages arising from the dam's erection, an equitable order for abatement, and successive actions for yearly damages." *Dorey v. Estate of Spicer*, 1998 ME 202, ¶ 9, 715 A.2d 182, 184 (citing *Jones v. Skinner*, 61 Me. 25, 26 (1872)). Here, Plaintiffs have asked the Court to use its equitable powers and issue a permanent injunction. Before granting a preliminary or permanent injunction, however, the Court must find that four criteria are met:

> "(1) that plaintiff will suffer irreparable injury if the injunction is not granted,
> (2) that such injury outweighs any harm which granting the injunctive relief would inflict on the defendant,
> (3) that plaintiff has exhibited a likelihood of success on the merits (at most, a probability; at least, a substantial possibility),
> (4) that the public interest will not be adversely affected by granting the injunction." *Ingraham v. University of Maine*, 441 A.2d 691, 693 (Me. 1982).

First, Defendant's dam has flooded the property of Plaintiffs, which in turn, has resulted in the destruction of trees. The flooding and tree damage has interfered with Plaintiffs' use and enjoyment of their land. If the flooding continues, Plaintiffs will suffer irreparable injury, as that portion of their property will remain underwater. Second, the potential injury to the Plaintiffs outweighs any harm an injunction would inflict upon Defendant, particularly because the injunction merely orders Defendant to refrain from flooding Plaintiffs land in an unauthorized manner. Third, to the extent this showing is required, Plaintiffs have succeeded on the merits of their claim. Finally, Defendant provides no case or statutory law, which authorizes the flooding of another's

---

[4] Use of the word "dam" in this instance contemplates those dams subsequently included in the Act; that is, those dams used to general electrical or mechanical power.

property for the benefits he proposes. Thus, Defendant as not demonstrated a viable public interest.

Having satisfied the required criteria for a permanent injunction, the Court grants Plaintiffs' motion.

The entry is:

> Judgment is entered in favor of Plaintiffs against Defendant on Plaintiffs' Complaint.
>
> Defendant is enjoined from restoring or maintaining a dam which floods the Plaintiffs land when such flooding in not for the purpose of a hydropower project as defined in 38 M.R.S.A. § 632(3) or for the benefit of a mill.

DATE:  6/24/05

M. Michaela Murphy
JUSTICE, SUPERIOR COURT

7

LEWIS E MATTESON ET AL VS MALCOLM BATCHELDER
UTN:AOCSsr  -2008-0023827                    CASE #:BANSC-CV-2008-00065
-------------------------------------------------------------------------
SEL VD                              REPRESENTATION TYPE     DATE
01 0000003904 ATTORNEY:BEAROR, EDMOND
ADDR:
    F FOR:LEWIS E MATTESON               PL         RTND   03/04/2008
    F FOR:BETTY J MATTESON               PL         RTND   03/04/2008

02 0000002764 ATTORNEY:DEVOE, WILLIAM

    F FOR:MALCOLM BATCHELDER             DEF        RTND   04/10/2008




        Enter Option: A=Add, B+Sel=Browse, M=More, R+Sel=RltnEdit:

Select the EXIT KEY for page selection line.

STATE OF MAINE                                    SUPERIOR COURT
PENOBSCOT, ss.                            Civil Action, Docket No. CV-2008-65

FILED & ENTERED
SUPERIOR COURT
JUL 07 2008
PENOBSCOT COUNTY

LEWIS E. MATTESON and          )
BETTY J. MATTESON,             )
                               )
                Plaintiffs     )
                               )            **ORDER**
                               )
v.                             )
                               )
MALCOLM BATCHELDER,            )
                               )
                Defendant      )

This matter is before the court on defendant's unopposed motion to reconsider. Upon reflection the court agrees that the case was not ripe for a final hearing on the date the parties convened to present arguments on plaintiffs' motion for preliminary injunction.

Accordingly, it is hereby ORDERED that the court's prior order entered on June 24, 2008, is hereby AMENDED by substituting "a hearing on the motion" for "A bench trial on the matter" in the fourth sentence of the order, by substituting "preliminary" for "permanent" on page 7 of the order, and by deleting the penultimate sentence granting judgment in favor of the plaintiffs.

In all other respects the court's June 24, 2008, order stands.

Date: 7 | 7 | 08

_____
Justice, Maine Superior Court

A TRUE COPY
ATTEST: Margaret Gardner
                    CLERK

LEWIS E MATTESON ET AL VS MALCOLM BATCHELDER
UTN:AOCSsr  -2008-0023827                    CASE #:BANSC-CV-2008-00065
--------------------------------------------------------------------------
LEWIS  E. MATTESON                                        PL
ATTY BEAROR, EDMOND  Tel# (207) 947-4501
ATTY ADDR:84 HARLOW ST PO BOX 1401 BANGOR ME 04402-1401

BETTY  J. MATTESON                                        PL
ATTY BEAROR, EDMOND  Tel# (207) 947-4501
ATTY ADDR:84 HARLOW ST PO BOX 1401 BANGOR ME 04402-1401

MALCOLM BATCHELDER                                        DEF
ATTY DEVOE, WILLIAM  Tel# (207) 947-0111
ATTY ADDR:80 EXCHANGE ST PO BOX 1210 BANGOR ME 04402-1210